*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0252p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JOSEPH MICHAEL LOGSDON,

> *Plaintiff-Appellant,*

v.

CHARLES HAINS and DANIEL MCSHANE,

> *Defendants-Appellees.*

No. 06-4085

>

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 05-00541—S. Arthur Spiegel, Sr., District Judge.

Argued: April 26, 2007

Decided and Filed: July 6, 2007

Before: SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Thomas W. Condit, Cincinnati, Ohio, for Appellant. Richard Ganulin, CITY SOLICITOR'S OFFICE FOR THE CITY OF CINCINNATI, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Thomas W. Condit, Cincinnati, Ohio, for Appellant. Richard Ganulin, CITY SOLICITOR'S OFFICE FOR THE CITY OF CINCINNATI, Cincinnati, Ohio, for Appellees.

_____

**OPINION**

_____

CLAY, Circuit Judge. Plaintiff, Joseph Michael Logsdon, appeals the district court's order granting a Rule 12(b)(6) motion brought by Defendants, Charles Hains and Daniel McShane, and dismissing Plaintiff's § 1983 suit and related claims. Plaintiff alleged violations of his rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, and asserted various state law claims for violations of the Ohio Constitution and state common law. For the reasons that follow, we **REVERSE** the district court's order and **REMAND** for further proceedings consistent with this opinion.

**BACKGROUND**

Plaintiff has long been "an active member of the pro-life movement" who, specifically, engages in sidewalk counseling and peaceful protest outside abortion clinics in and around

1

Cincinnati, Ohio.[1]  (J.A. at 8)  Plaintiff alleges that he has "never threatened or committed any act of violence" while counseling or protesting.  (*Id*. at 9)  Plaintiff admits, however, that on several occasions, he crossed the property line of the abortion clinics to communicate with clinic patients and hand them literature.  Accordingly, Plaintiff has been charged with and convicted of criminal trespass in the past.  Yet, Plaintiff claims that "he has always treated judges and prosecutors with respect, served his sentence(s) with dignity, and complied with any related court orders."  (*Id.*)  Plaintiff characterizes himself as a "regular presence" at Cincinnati Women's Services ("CWS"), an abortion clinic in Cincinnati.  Plaintiff admits that, on the basis of his experience at CWS and with its President, Debi Jackson ("Jackson"), his "regular presence" is an unwelcome presence.  (*Id.*)

Plaintiff's § 1983 suit arose from two separate encounters with the City of Cincinnati police.  The first occurred October 28, 2003 on the public sidewalk outside CWS, where Plaintiff protested and counseled clinic patients.  On that day, Plaintiff hung a sign on the neighboring property's fence.  The sign said, "God has a plan for your baby," and listed a telephone number.  (J.A. at 10)  A clinic patient complained about Plaintiff's sign and, apparently in response to the patient's complaint, Jackson removed Plaintiff's sign from the fence and "walked toward the CWS clinic with the intention of destroying it."  (*Id.*)  Plaintiff demanded that Jackson return his sign, to no avail.  At that point, Plaintiff walked onto CWS property and took back his sign from Jackson, thereafter "promptly return[ing] to the public sidewalk."  (*Id.*)  Jackson subsequently contacted the City of Cincinnati Police.

Defendant Charles Hains ("Hains"), an officer of the Cincinnati Police Department, responded to the scene and placed Plaintiff under arrest.  Defendant Hains did not have a warrant for Plaintiff's arrest and did not observe the incident at issue.  Additionally, Defendant Hains refused to listen to a witness's account of the incident, admonishing her to "Tell it to the judge."  (J.A. at 11)  Ultimately, Defendant Hains arrested Plaintiff for criminal trespass and disorderly conduct.  Plaintiff remained in custody for approximately four hours, after which time he was released on bond.  Pursuant to these charges, Plaintiff appeared in Hamilton County Municipal Court on several occasions along with counsel.  The court conducted a bench trial on May 10, 2004, finding Plaintiff guilty of criminal trespass, but acquitting him of disorderly conduct.  On appeal heard April 22, 2005, the Hamilton County Court of Appeals reversed Plaintiff's conviction for criminal trespass upon a finding that Plaintiff was privileged to enter CWS property to retrieve his sign.  Over the course of these proceedings, Plaintiff incurred attorney fees in excess of $10,000, and avers that he suffered various other harms and indignities.[2]  Plaintiff avers that Defendant Hains acted in "malicious and/or reckless disregard of [Plaintiff's] clearly established statutory and constitutional rights."  (J.A. at 12)

The second encounter took place on June 18, 2004.  That day, Plaintiff again counseled clinic patients and protested on the public sidewalk near CWS.  In order to communicate with a clinic patient arriving in the CWS parking lot that day, Plaintiff walked into an adjacent public park and spoke to the patient through a chain link fence.  Plaintiff describes the conversation as "not hostile" and says it "lasted for several minutes" before the clinic patient entered the clinic.  (J.A. at 13)

---

[1]Because we review the district court's grant of a Rule 12(b)(6) motion to dismiss, we rely solely upon the allegations contained in Plaintiff's complaint.  In ruling on Defendants' motion to dismiss, the district court took judicial notice of the transcripts of the criminal proceeding against Plaintiff arising out of his October 2003 arrest.  *Logsdon v. Hains*, No. 1:05-CV-00541, 2006 WL 1793243, at *2 n.1 (S.D. Ohio June 27, 2006) (unpublished).  That transcript was made a part of the record on appeal.  Having reviewed the transcript, we find no need to take judicial notice inasmuch as the facts set forth therein are, in pertinent part, co-extensive with the factual allegations in Plaintiff's complaint.

[2]It appears that Plaintiff initially filed suit against Defendant Hains in the Hamilton County Court of Common Pleas on October 27, 2004, asserting various state law claims.  However, Plaintiff filed a voluntary notice of dismissal without prejudice and reserved his right to re-file those claims.

Following that encounter, an employee at CWS called the Cincinnati Police to complain of trespass by Plaintiff. Defendant Daniel McShane ("McShane"), an officer of the Cincinnati Police Department, responded and placed Plaintiff under arrest for criminal trespass. Plaintiff states that McShane had no warrant for Plaintiff's arrest and refused to listen to a witness's account of the incident. Additionally, McShane was apparently not present at the scene during Plaintiff's encounter with the clinic patient. Defendant McShane filed criminal trespass charges against Plaintiff, and Plaintiff was held at the Hamilton County Justice Center for four hours that day. On this trespass charge, Plaintiff also appeared several times before the Hamilton County Municipal Court along with counsel before the court ultimately dismissed the charge on November 3, 2004. Plaintiff states that he incurred over $2,000 in attorney fees in relation to this charge. Plaintiff alleges that Defendant McShane "performed maliciously and/or in reckless disregard of [Plaintiff's] clearly established statutory and constitutional rights." (J.A. at 14)

On December 8, 2005, Defendants filed a motion to dismiss Plaintiff's § 1983 complaint for failure to state a claim. Therein, Defendants set forth five bases for granting their motion to dismiss: (1) that Plaintiff failed to plead a federal constitutional claim; (2) that qualified immunity would shield Defendants from suit; (3) that issue preclusion applied; (4) that there existed an insufficient justification for pendent jurisdiction; and (5) that Plaintiff failed to adequately plead state tort claims. Plaintiff responded with a motion to convert Defendants' motion to dismiss into a proceeding for summary judgment and for discovery, as well as a response in opposition to Defendants' motion to dismiss.

Ultimately, the district court granted Defendants' motion to dismiss. In its order dismissing Plaintiff's case, the district court reasoned as follows:

> [Plaintiff's] Fourth Amendment claims clearly relate to his arrests, and his First Amendment claims are grounded in the theory that his arrests impeded his freedom of expression and of assembly. Should the arrests be supported by probable cause, then none of Plaintiff's constitutional claims survive. Having reviewed this matter, the Court finds the arresting officers, in relying on testimony of a reliable witness and finding [Plaintiff] at the scene of the alleged trespass, reasonably believed that Plaintiff committed trespass. Accordingly the Officers had probable cause.

*Logsdon*, 2006 WL 1793243, at *4. Additionally, the district court found that even if it erred in finding no constitutional violations, Defendants were each protected by the doctrine of qualified immunity. *Id.* at *8. Specifically, the district court opined that Defendant "Hains was clearly reasonable in arresting [Plaintiff,]" and that Defendant McShane "at worst . . . reasonably misapprehended the law governing the circumstances he discovered." *Id.* Plaintiff timely appealed the district court's order.

## DISCUSSION

## I.        PLAINTIFF'S FEDERAL CONSTITUTIONAL CLAIMS

### A.        Standard of Review

We review *de novo* the district court's grant of a Rule 12(b)(6) motion. *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 345 (6th Cir. 2007); *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). Reviewing the district court's decision on a motion to dismiss, we construe the plaintiff's complaint liberally, in plaintiff's favor, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)). If, after doing so, we find that the plaintiff failed to state a claim for relief, we will affirm the district court's grant. *Id.* However, "[t]he district court's dismissal of a civil rights complaint on a 12(b)(6) motion is

scrutinized with special care." *Id*. Finally, we review *de novo* the district court's finding of qualified immunity. *Bloch*, 156 F.3d at 677 (citing *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 998 (6th Cir. 1994)).

### B.     Qualified Immunity and Plaintiff's Fourth Amendment Claims

Plaintiff contends that the district court erred in dismissing his § 1983 suit inasmuch as his complaint states a claim for violations of his Fourth Amendment right to be free from unreasonable searches and seizures. The district court granted Defendants' Rule 12(b)(6) motion to dismiss, finding that Defendants each had probable cause to arrest Plaintiff and, at any rate, were protected by qualified immunity. Having "scrutinized with special care" the district court's order dismissing Plaintiff's claims, we hold that the district court erred in granting Defendants' motion to dismiss Plaintiff's Fourth Amendment claims.

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As a threshold matter, we first consider whether "the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If, upon review, we determine that the officer in question violated the claimant's constitutional rights, we proceed to a second question: whether at the time of the alleged violation that right was "clearly established." *Id*. Accepting Plaintiff's factual allegations as true and drawing all reasonable inferences in his favor, we find that the district court erred in dismissing Plaintiff's Fourth Amendment claims against Defendants Hains and McShane. We approach the question within the framework of qualified immunity analysis, and first conclude that, on the facts alleged, Defendants Hains and McShane each violated the Fourth Amendment in arresting Plaintiff absent a warrant inasmuch as they lacked probable cause. *See Saucier*, 533 U.S. at 201.

The Fourth Amendment protects the right of individuals to be free from improper arrest and detention. U.S. Const. amend. IV ("The right of people to be secure in their persons . . . against unreasonable seizures . . . shall not be violated."). "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed," *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004), and the "validity of the arrest does not depend on whether the suspect actually committed a crime." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). Accordingly, "[i]n order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999)).

"Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States*, 361 U.S. 98, 102 (1959); *see also Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The inquiry "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest," *Devenpeck*, 543 U.S. at 152, where supported by "reasonably trustworthy information." *Beck*, 379 U.S. at 91. No overly-burdensome duty to investigate applies to officers faced with the prospect of a warrantless arrest. In initially formulating probable cause, they need not "investigate independently every claim of innocence." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). And after the officer determines, on the basis of the facts and circumstances known to him, that probable cause exists, the officer has no further duty to investigate or to search for exculpatory evidence. *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999); *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). However, the initial probable cause determination must be founded on "both the inculpatory *and* exculpatory evidence" known to the arresting officer, *Gardenhire*, 205 F.3d at 318 (emphasis in original); *Estate of Dietrich v. Burrows*,

167 F.3d 1007, 1012 (6th Cir. 1999), and the officer "cannot simply turn a blind eye toward potentially exculpatory evidence." *Ahlers*, 188 F.3d at 372; *see also id.* at 371 (noting that officers may not "make hasty, unsubstantiated arrests with impunity"); *Fridley*, 291 F.3d at 873 ("The officer may not ignore information which becomes available in the course of routine investigations."). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Fridley*, 291 F.3d at 872 (quotation marks omitted).

"Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *DeFillippo*, 443 U.S. at 36. Defendants each arrested Plaintiff for criminal trespass.[3] In Ohio, an individual commits criminal trespass by "[k]nowingly enter[ing] or remain[ing] on the land or premises of another" absent "privilege to do so." Ohio Rev. Code § 2911.21(A)(1). The Ohio Code defines "privilege" as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." *Id.* at § 2901.01(A)(12). Ohio courts construe the lack-of-privilege requirement as an element of the offense of criminal trespass, and not an affirmative defense. *State v. Newell*, 639 N.E.2d 513, 514 (Ohio Ct. App. 1994) ("In a criminal trespass charge, the state is required to prove lack of privilege."); *State v. Keegan*, 588 N.E.2d 928, 929 (Ohio Ct. App. 1990) (classifying absence of privilege as an "essential element of trespass"). Accordingly, Defendants had probable cause to arrest Plaintiff if, on the basis of the facts known to them, they could reasonably conclude that Plaintiff knowingly entered CWS's property without privilege.

At the time Defendant Hains arrested Plaintiff, Hains knew only that Jackson called the Cincinnati Police to complain that Plaintiff had entered the CWS property.[4] Upon arriving at the scene, Defendant Hains refused to listen to an eyewitness account of the incident, directing the witness to "Tell it to the judge." Although Plaintiff admits that he knowingly entered the premises of CWS to retrieve his sign on October 28, 2003, on the facts alleged in Plaintiff's complaint, Defendant Hains did not observe this conduct, nor did Plaintiff admit such conduct to Defendant Hains at the scene. Similarly, the facts and circumstances known to Defendant McShane, as alleged in Plaintiff's complaint, were that "someone at CWS called the City of Cincinnati Police Division alleging that [Plaintiff] had trespassed." (J.A. at 13) Like Hains, McShane did not witness the alleged trespass. Also like Hains, Defendant McShane declined to hear a sidewalk counselor's "attempted explanation" of the incident. (*Id.* at 12-13)

Reading Plaintiff's complaint in the light most favorable to him, Defendants failed to reasonably determine whether they had probable cause. In the course of initially assessing whether probable cause to arrest Plaintiff existed, Defendants respectively "turn[ed] a blind eye" to potentially exculpatory evidence when they refused to listen to the witnesses at the scene. A prudent officer must draw reasonable conclusions from the facts and circumstances known to him as supported by "reasonably trustworthy information." *See Beck*, 379 U.S. at 91. It appears that Defendants deliberately excluded from a totality of known facts and circumstances information that might bear on the accuracy, reliability, or trustworthiness of the report that Plaintiff had trespassed on CWS's property. To that extent, Defendants did not act as "prudent officer[s]" and their conclusions cannot be deemed "reasonable." Rather, potentially conflicting explanations from these eyewitnesses would have informed Defendants' probable cause analyses, giving them reason to

---

[3] Defendant Hains additionally charged Plaintiff with disorderly conduct. Yet, on appeal, the respective parties do not rely on the disorderly conduct charge to establish or to challenge the constitutionality of Plaintiff's arrest. Accordingly, we examine each of Plaintiff's claims with reference to the criminal trespass charge alone.

[4] Expressly, Plaintiff's complaint alleges, "Jackson proceeded to call the City of Cincinnati Police Division to report that [Plaintiff] had committed a crime and to seek police intervention." (J.A. at 10)

question the reliability of reports that Plaintiff had committed criminal trespass.[5] *Cf. Ahlers*, 188 F.3d at 370. Although our Circuit's precedent "does not mandate that law enforcement operatives should conduct quasi-trials as a necessary predicate to the warrantless arrest" of suspects, *Painter*, 185 F.3d at 571 n.21, it does require that warrantless arrest follow consideration of the totality of the circumstances reasonably known to the arresting officers. Because officers initially assessing probable cause to arrest may not off-handedly disregard potentially exculpatory information made readily available by witnesses on the scene, there is a set of facts consistent with the pleadings in which Defendants violated Plaintiff's Fourth Amendment rights. *See Gardenhire*, 205 F.3d at 318; *Ahlers*, 188 F.3d at 371-72; *cf. Painter*, 185 F.3d at 571.

At oral argument, Defendants argued that officers need not entertain *any* exculpatory evidence to the contrary when they receive a call from a "reliable source" reporting purportedly criminal activity. Defendants' argument is undermined as a result of Defendants' failure to offer a persuasive explanation of what constitutes a "reliable source." For purposes of this discussion, we shall limit our definition of reliable source to someone with respect to whom there is no apparent reason to question the person's reliability. Probable cause assessments depend on the totality of the circumstances known to the officer. Here, the totality should have encompassed readily available eyewitness accounts, but did not because Defendants refused to listen. We express no opinion as to whether, where the totality of the circumstances consists solely of a report of criminal activity from a reliable source, probable cause exists to arrest. That case is not before us.[6] Even assuming that CWS constitutes a "reliable source" here, Defendants deliberately disregarded available evidence and, consequently, failed to reasonably formulate probable cause. Accordingly, Defendants' argument has no merit in this case.

Our conclusion is only that sufficient facts have been alleged to avoid dismissal on the pleadings. We conclude that Plaintiff has stated a claim that Defendants lacked probable cause to arrest Plaintiff and, therefore, that they violated Plaintiff's Fourth Amendment rights.

We next consider whether Plaintiff's rights were "clearly established." *Saucier*, 533 U.S. at 207. On this point, we determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. Qualified immunity cannot be invoked to shield an officer from liability where "in light of pre-existing law, the unlawfulness" of his conduct was "apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Pre-existing law need not address the very question at hand; rather, "[t]he contours of the right must be sufficiently clear." *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 830 (6th Cir. 2007). In June 2004, "the law was clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual." *Gardenhire*, 205 F.3d at 313 (quoting *Dietrich*, 167 F.3d at 1012) (internal quotation marks omitted). There has been no sea change in this body of law since Plaintiff's arrest in June 2004. As a result, the district court erred in finding Defendants protected by qualified immunity.

---

[5] It is worth noting that on the facts alleged in Plaintiff's complaint, the CWS employee reporting Plaintiff's alleged criminal trespass on the second occasion did not actually witness the event, but rather relied upon the report of a CWS client. The presumption of reliability often afforded eyewitness accounts would therefore not apply with equal force to the CWS employee reporting the second incident. *See Ahlers*, 188 F.3d at 370 (noting that "since eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity").

[6] On some conceivable set of facts, a call from a reliable source, standing alone, may be sufficient to establish probable cause. Although not directly on point, *Ahlers* is instructive. There, a victim's "accusation that she had been sexually assaulted by [the § 1983 plaintiff], standing alone, was sufficient to establish probable cause," where there was no apparent reason to question the reliability of that accusation. 188 F.3d at 370.

We note that on remand, after sufficient discovery, the district court quite obviously retains its discretion to entertain motions for summary judgment. Without the benefit of discovery, we express no opinion on the ultimate merits of Plaintiff's case. We simply find, having "scrutinized" Plaintiff's case "with special care," that the district court improvidently dismissed Plaintiff's claims. *See Gazette*, 41 F.3d at 1064. Accordingly, we reverse the district court's dismissal of Plaintiff's Fourth Amendment claims.

### C.      Qualified Immunity and Plaintiff's First Amendment Claims

Plaintiff additionally alleged violations of his rights under the First Amendment. Before the district court, Plaintiff denied asserting a First Amendment retaliation action. Rather, he claimed to challenge "Defendants' actions in removing him from the public sidewalk, when he had done nothing wrong, [as] a *per se* violation of his First Amendment freedoms." *Logsdon*, 2006 WL 1793243, at *4. As the district court correctly noted, Plaintiff's "First Amendment claims are grounded in the theory that his arrests impeded his freedom of expression and of assembly." *Id*. The district court therefore concluded that "[s]hould the arrests be supported by probable cause, then none of Plaintiff's constitutional claims survive." *Id*. Because the district court erred in granting Defendants' motion to dismiss Plaintiff's Fourth Amendment claims, the district court's basis for dismissing Plaintiff's First Amendment claims is no longer valid. Examining Plaintiff's First Amendment claims *de novo*, with reference to other plausible theories, we reverse the district court's dismissal of Plaintiff's First Amendment claims.

We begin by considering whether Defendants violated Plaintiff's constitutional rights. *See Saucier*, 533 U.S. at 201. On appeal, Plaintiff does little to clarify how Defendants violated his First Amendment rights. Plaintiff does not argue that Defendants arrested him in retaliation for his exercise of speech, nor could he, having disavowed this argument before the district court.[7] Rather, Plaintiff cites *Frisby v. Schultz*, 487 U.S. 474 (1988) and *Pouillon v. City of Owosso*, 206 F.3d 711 (6th Cir. 2000), apparently in support of an argument that the state impermissibly regulated speech conducted in a public forum.

*Frisby v. Schultz* concerned a facial First Amendment challenge to a city ordinance that banned all picketing "'before or about' any residence." 487 U.S. at 476. There, the plaintiffs were abortion protestors who sought to picket on a public street in front of an abortion provider's home, and who were prevented from picketing after the city adopted the prohibitive ordinance. *Id*. The Supreme Court in *Frisby* analyzed the plaintiff's challenge under the public forum doctrine, first acknowledging that the ordinance restricted speech in a "traditional public forum" inasmuch as it prevented protest on public streets and sidewalks. *Id*. at 479-81. The *Frisby* court next observed that the appropriate level of scrutiny depends on whether the ordinance is content-neutral in marking the bounds of permissible speech. *Id*. at 481. Finding the city's ordinance to be content-neutral, the court went on to consider "whether the ordinance is 'narrowly tailored to serve a significant government interest' and whether it 'leave[s] open ample alternative channels of communication.'" *Id*. at 482 (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). Construing the ordinance narrowly, the court ultimately upheld the ordinance, finding that it preserved adequate alternative channels of communication, and that it served the significant government interest of protecting residential privacy. *Id*. at 484.

---

[7]We note that, had Plaintiff asserted a claim that Defendants retaliated against him in response to his exercise of free speech, Plaintiff would have preserved yet another potentially favorable path to make out a First Amendment violation, or at least to survive motions for summary judgment. *See generally Center for Bio-Ethical Reform*, 477 F.3d at 820-24; *see also id*. at 823-24 (concluding that genuine issues of material fact remained as to officers' motivation in effecting a lengthy detention of pro-life activists); *McCurdy v. Montgomery County*, 240 F.3d 512, 520 (6th Cir. 2001) (arrest absent probable cause constitutes adverse action of sufficient consequence to form the basis of a retaliation claim).

In *Pouillon v. City of Owosso*, police arrested the plaintiff, an anti-abortion protestor, purportedly for "'refusing a lawful police order' to move, and 'obstructing passage to a public building.'" 206 F.3d 711, 713 (6th Cir. 2000). There, the plaintiff had been protesting abortion on the steps of city hall when officers instructed him to move because he "was obstructing entry to and egress from city hall." *Id.* at 714. Plaintiff refused. *Id.* Police then arrested him, took him into custody, and subsequently booked and charged him under a city ordinance that prohibits interference with police in the conduct of their duties. *Id.* The plaintiff in *Pouillon* brought a § 1983 suit against the officers alleging violations of his First and Fourth Amendment rights. *Id.* at 713-14. With respect to his First Amendment claim, the plaintiff argued that in arresting him for refusing to move his protest off the city hall steps, "the officers' restriction of his freedom of speech, even if construed as a time, place, and manner regulation, was not a reasonable one." *Id.* at 714.

We concluded in *Pouillon* that the city hall steps were a traditional public forum and, accordingly, that "protest on the steps of city hall could not be prohibited altogether." *Id.* at 717. We then went on to consider "whether requiring [the plaintiff] to move to the sidewalk was a reasonable time, place, and manner restriction that . . . left open ample alternative channels of communication." *Id.* at 717-18. Because the plaintiff had previously been harassed while protesting on the streets, and allegedly had stopped protesting on the street for that reason, we found that a question of fact remained as to whether the requirement to move to the sidewalk left open ample alternative channels of communication to the plaintiff, or alternatively "inhibit[ed] his protest." *Id.* at 718. We additionally noted an open question of fact as to "whether [the plaintiff's] protest . . . was impeding access to city hall such that it was reasonable to require him to move." *Id.* at 717.

In the instant case, Plaintiff averred that he engaged in anti-abortion protest and counseling from the public sidewalk and public park adjoining the CWS property, both quintessentially public fora. *See Perry Educ. Ass'n*, 460 U.S. at 45 ("[S]treets and parks . . . 'have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'") (quoting *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515 (1939)). On the facts alleged in Plaintiff's complaint, Defendants each removed Plaintiff from the public fora, thereby causing him to cease his protest and counseling, ostensibly for violating Ohio's criminal trespass law. In public fora, "[r]easonable time, place and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest." *Perry Educ. Ass'n*, 460 U.S. at 46. Plaintiff's complaint alleges that Defendants each "[d]emonstrat[ed] a blatant bias against [Plaintiff] and in favor of doing whatever CWS wanted." (J.A. at 11, 13) Construing Plaintiff's complaint liberally, Plaintiff alleges that Defendants were motivated by the content of his speech in removing him from the public forum, and not by any purported criminal trespass. Accordingly, Plaintiff has stated a claim that Defendants violated his First Amendment rights by restricting his speech on the basis of content.[8]

Next, we consider whether qualified immunity applies to the alleged First Amendment violation, and we specifically look to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. It has long been the case that content-based regulations of the citizen's right to engage freely in speech in quintessential public fora presumptively violate the First Amendment. *See Perry Educ. Ass'n*, 460 U.S. at 46; *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) ("The First Amendment

---

[8]Even if Plaintiff failed to adequately allege content-based regulation of speech, under our analysis in *Pouillon*, Plaintiff apparently argues that his arrest for criminal trespass can be construed as a content-neutral regulation of speech. In either event, as in *Pouillon*, questions remain as to whether Plaintiff actually committed criminal trespass, whether any reasonable officer could have believed Plaintiff criminally trespassed, and why Defendants arrested Plaintiff. *Cf. Pouillon*, 206 F.3d at 714.

generally prevents government from proscribing speech . . . because of disapproval of the ideas expressed. Content-based regulations are presumptively invalid.") (internal citations omitted). The contours of the First Amendment public forum doctrine are sufficiently clear. Here, Defendants ostensibly arrested Plaintiff for violating Ohio's criminal trespass law. However, if instead, as Plaintiff appears to allege, Defendants arrested him because of the content of his speech, then Defendants acted in violation of the First Amendment in ways that should have been clear to a reasonable officer. Viewing the allegations in the light most favorable to Plaintiff, the district court erred in dismissing Plaintiff's First Amendment claims. We reverse because Plaintiff stated a claim, but express no opinion as to whether Plaintiff will ultimately succeed on his claim following discovery.

## II.     PLAINTIFF'S STATE LAW CLAIMS

### A.     Standard of Review

This Court reviews a district court's grant of a Rule 12(b)(6) motion *de novo*, as set forth in Section I.A, *supra*. *See Petty*, 478 F.3d at 345; *Bloch*, 156 F.3d at 677.

### B.     State Law Tort Claims

The district court held that Plaintiff's state law claims of false arrest, false imprisonment, and malicious prosecution could not be sustained because each of those claims required a showing that Plaintiff had been unlawfully detained. We reverse the district court's dismissal of Plaintiff's state law claims.

We agree with the district court that each of those claims in some way required proof of unlawful detention. First, to succeed on a claim of malicious criminal prosecution, an Ohio claimant must show three elements: "(1) malice in instituting or continuing the prosecution, (2) *lack of probable cause*, and (3) termination of the prosecution in favor of the accused." *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, syllabus (Ohio 1990) (emphasis added). Second, "[f]alse imprisonment occurs when a person confines another intentionally '*without lawful privilege* and against his consent within a limited area for any appreciable time, however short.'" *Bennett v. Ohio Dep't of Rehab. & Corr.*, 573 N.E.2d 633, 636 (Ohio 1991) (emphasis added). Third, the essential elements for a false arrest claim in Ohio are "indistinguishable from a claim for false imprisonment in that each claim requires proof that one was intentionally confined . . . *without lawful justification*." *Evans v. Smith*, 646 N.E.2d 217, 225 (Ohio Ct. App. 1994) (emphasis added). Because we conclude that Plaintiff's complaint states a claim that Defendants unlawfully arrested Plaintiff, we reverse.

### C.     State Law Constitutional Claims

Finally, Plaintiff also alleged violations of the Ohio State Constitution in his complaint – specifically, of Article I, Sections 11 and 14. The district court below never squarely addressed Plaintiff's state constitutional claims. On appeal, Plaintiff merely argues that if this Court finds Plaintiff stated a claim for violations of the U.S. Constitution, then the "state law claims" should be reinstated on remand. (Pl.'s Br. at 28) Article I, Section 11 of the Ohio Constitution is interpreted in lockstep with the First Amendment to the U.S. Constitution. *Eastwood Mall, Inc. v. Slanco*, 626 N.E.2d 59, 61 (Ohio 1994). Additionally, Ohio courts have read Article I, Section 14 of the Ohio Constitution "to protect the same interests and in a manner consistent with the Fourth Amendment to the United States Constitution." *State v. Andrews*, 565 N.E.2d 1271, 1273 n.1 (Ohio 1991). As previously set forth, Plaintiff stated a claim against Defendants for violations of the First and Fourth Amendment. Accordingly, on remand, the district court should consider Plaintiff's contention that Defendants violated Article I, Section 11 and Article I, Section 14 of the Ohio Constitution.

## CONCLUSION

For the above reasons, we **REVERSE** the district court's order and **REMAND** for further proceedings consistent with this opinion.