NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0159n.06
Filed: February 23, 2009

No. 08-5463

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TERESA EVANS, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF ETOWAH, TENNESSEE; EMPIRE | ) | |
| SURETY GROUP, INC., d.b.a. A 24 HR Bonding | ) | ON APPEAL FROM THE |
| Co.; JASON YESTE; JASON SCHWIND, in their | ) | UNITED STATES DISTRICT |
| individual and official capacity as agents for Empire | ) | COURT FOR THE EASTERN |
| Surety Group, Inc., | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendants, and | ) | |
| | ) | |
| CHUCK NELMS; BILL CRAWFORD, City of | ) | |
| Etowah Police Officers, in their individual and official | ) | |
| capacity as agents for the City of Etowah, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE: ROGERS, SUTTON, and McKEAGUE, Circuit Judges.

ROGERS, Circuit Judge. Defendants, City of Etowah police officers Chuck Nelms and Bill

Crawford, appeal the district court's denial of their motion for summary judgment based on qualified

immunity. In November 2005, defendants aided bail bond agents in arresting Brandon Noble.

During the course of the arrest, defendants also arrested plaintiff Teresa Evans, Noble's mother, and

charged her with being an accessory after the fact for harboring Noble. After a grand jury returned

a no true bill on that charge, Evans sued Nelms and Crawford under 42 U.S.C. § 1983, claiming the

arrest was without probable cause in violation of the Fourth Amendment of the U.S. Constitution.

Defendants moved for summary judgment and the district court denied their motion. Defendants brought this interlocutory appeal. The facts at summary judgment, as assumed by the district court and construed in the light most favorable to Evans, support both that Evans's constitutional right was violated and that the right is clearly established. The defendants were not, therefore, entitled to summary judgment.

## I.

Evans's son, Brandon Noble, was arrested in Georgia on drug charges in August 2004. Evans secured a bond with Empire Surety Group, Inc., which allowed for Noble's release pending trial. As a condition of release, Noble was required to live with Evans in Etowah, Tennessee. Empire also required Noble to call Empire daily from Evans's home.

Noble did not appear for a Georgia court proceeding on October 31, 2005, and a bench warrant was issued for his arrest. According to Evans, Noble failed to appear because he was at an in-patient psychiatric facility. Noble's attorney told Evans that the judge would rescind the warrant upon receipt of paperwork confirming Noble's whereabouts. According to Evans, she sent the paperwork to Noble's attorney, but he never brought the paperwork to the attention of the Georgia court.

In November 2005, Empire's out-of-state bonding agents contacted defendant Officer Nelms about taking Noble into custody. The Empire agents showed Nelms their business cards, credentials, and a copy of the bench warrant for Noble's arrest. According to Nelms, at some point the Empire agents told Nelms that Evans had lied to them about Noble's whereabouts, stating that Noble was

not at her home. However, Empire agents later received a call from Noble and the caller identification verified that the call was placed from Evans's house.

Nelms agreed to help Empire arrest Noble and enlisted the aid of another Etowah police officer, defendant Crawford. In the evening on November 22, 2005, defendants and the Empire agents met at Evans's house to retrieve Noble. The parties disagree about what then happened.

According to Evans, upon hearing the defendants arrive, Evans went into Noble's room to look out the window and investigate the situation. When she was unable to identify the individuals, Evans retrieved and loaded a rifle. After hearing the police identify themselves, Evans laid the rifle on the bed and went to open the front door. Although Evans yelled to the police to wait as she was coming to the door, the police kicked in the door before she could open it, which caused her to fall backwards onto the floor. Evans stated that the police then threw her on the couch, shined a light in her eyes, and repeatedly yelled "where is he?" When she asked whom they were looking for, the police finally said that they were looking for Noble and she called for him to come out. Noble then emerged from a back bedroom, which was unlit, into the hallway, where he was taken into custody. According to Evans, defendants then used excessive force to place her in custody.

According to Nelms, he and an Empire agent approached the house while Crawford stayed in the driveway. Nelms claimed that he knocked on the door several times and announced that he was from the police, but there was no response from inside the house. When an individual eventually asked who he was, he again stated that he was from the police, advised that he had a warrant for Noble, and stated that the door would be opened forcibly if necessary. Nelms stated that the door was opened without incident. Despite repeated questioning by Nelms, Evans would not

indicate Noble's whereabouts. Evans finally admitted that Noble was at the home and called to him. The Empire agent discovered Noble in the closet of a bedroom and Noble was placed into custody. Nelms then instructed Crawford, who had entered the house, to arrest Evans.

Evans was charged as an accessory after the fact under Tennessee law. A grand jury did not find probable cause of an offense and returned a no true bill. This suit followed.

Evans sued Empire, its agents, the City of Etowah, and defendants Nelms and Crawford on multiple grounds. The only claim relevant to this appeal is Evans's 42 U.S.C. § 1983 claim against Nelms and Crawford for unlawful arrest. Defendants sought summary judgment, asserting that they were entitled to summary judgment on the basis of qualified immunity. The district court denied summary judgment because Evans's "account of the events[] [showed] she commit[ed] no act whatsoever which evince[d] an intent to hinder the officers, and therefore no probable cause exist[ed]." Nelms and Crawford appealed.

**II.**

This court has jurisdiction to review the denial of qualified immunity on interlocutory appeal because the defendants raise legal issues. While the denial of summary judgment is generally not appealable, the denial of qualified immunity is an exception to that rule to the extent the appeal raises legal issues. *Johnson v. Jones*, 515 U.S. 304, 309-13 (1995); *Williams v. Mehra*, 186 F.3d 685, 689-90 (6th Cir. 1999) (en banc). This court, however, is without jurisdiction to review the district court's determination that "the summary judgment record . . . raised a genuine issue of fact." *Johnson*, 515 U.S. at 313. Although defendants raise both legal and factual issues, this court ignores

"defendant[s'] attempts to dispute the facts and nonetheless resolve[s] the legal issue." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005).

**III.**

Under the facts assumed by the district court and construed in Evans's favor, defendants violated Evans's Fourth Amendment right. Determining whether such a violation exists is one of the two steps in the qualified immunity analysis. *See Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009). The Fourth Amendment generally prohibits arrests unsupported by probable cause, *Dunaway v. New York*, 442 U.S. 200, 207-08 (1979), although what constitutes probable cause depends on the nature of the criminal statute. *See, e.g.*, *Logsdon v. Hains*, 492 F.3d 334, 342 (6th Cir. 2007); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006). To arrest Evans as an accessory after the fact, defendants needed to have a reasonable and prudent belief that she was

> (a) A person . . . who, after the commission of a felony, with knowledge or reasonable ground to believe that the offender has committed the felony, and with the intent to hinder the arrest, trial, conviction or punishment of the offender:
>> (1) Harbors or conceals the offender;
>> (2) Provides or aids in providing the offender with any means of avoiding arrest, trial, conviction or punishment; or
>> (3) Warns the offender of impending apprehension or discovery.

Tenn. Code Ann. § 39-11-411; *see also Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999) (defining the probable cause requirement). The facts, assumed by the district court in Evans's favor, did not support that there was probable cause for Nelms or Crawford to conclude that Evans had both an intent to hinder and that she acted upon that intent.

The facts occurring *prior to* defendant's arrival at Evans's home do not support probable cause to arrest Evans as an accessory. Defendant Nelms had met with the bonding agents, had

received the warrant for Noble's arrest, and knew that Evans had previously lied about Noble's whereabouts.[1] At oral argument on this appeal, defendants' counsel conceded that these facts do not support probable cause of an intent to hinder arrest or actions taken upon that intent. The issue is whether the addition of the facts that occurred after defendants' arrival at Evans's home so solidified defendants' suspicions as to surpass the probable cause bar.

The facts occurring *after* defendants arrived at Evans's home, as demonstrated by Evans's evidence-supported allegations, do not provide enough additional evidence to create probable cause for arrest. The Supreme Court requires the court of appeals to review the record to determine "the facts that the district court assumed when it denied summary judgment." *Johnson*, 515 U.S. at 319. Where a district court does not entirely identify the facts it assumes, this court may consider "the facts as the plaintiff portrays them." *Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 438 (6th Cir. 2002). These facts are as follows: (1) there was a delay in answering the door, (2) Evans cooperated with the police as soon as she knew they were looking for Noble, (3) Evans called out to Noble and told him to come forward, and (4) Noble immediately emerged from a dark room into the common area.

The addition of these four facts still does not constitute evidence sufficient for a "prudent officer" to believe that Evans both intended to hinder the arrest of Noble and acted upon that intent. *Logsdon*, 492 F.3d at 342 (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Evans's delay in answering

---

[1] The bond agreement required Noble to live at Evans's home, which contradicts the agents' allegation that Evans lied. This fact is irrelevant to the probable cause analysis because this was not part of the "totality of the information that was known to the [officers] at the time of the arrest." *Parsons v. City of Pontiac*, 533 F.3d 492, 501 (2008).

the door does not alone support intent to harbor because there are numerous legitimate reasons for a delay. "[B]are allegation[s] of criminal wrongdoing . . . [are] insufficient" to support probable cause. *Parsons*, 533 F.3d at 500-01. Furthermore, that Noble was in a dark room is not very indicative of Evans's intent to harbor, especially given that it was nighttime and that, under these facts, Evans cooperated with the police. "[A]n officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). Nor do these facts create more than a suspicion that Evans then acted on her alleged intent by concealing, aiding, or warning Noble. A "mere suspicion of criminality" is not enough to establish probable cause. *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008) (citation and internal quotations omitted); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 305 (6th Cir. 2005); *see also Rothhaupt v. Maiden*, 144 Fed. App'x 465, 470 (6th Cir. 2005). Under these facts, the jury could find that defendants lacked sufficient indications that Evans acted with felonious intent to warrant a prudent officer's finding of probable cause. *See, e.g.*, *Parsons*, 533 F.3d at 503; *Swiecicki v. Delgado*, 463 F.3d 489, 500 (6th Cir. 2006).

Evans has sufficiently alleged a constitutional violation to withstand summary judgment on this point. The jury may ultimately disagree with this conclusion and this court does not pass on "the correctness of the plaintiff's version of the facts." *Johnson*, 515 U.S. at 313 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). At this stage, however, the facts assumed by the district court show a lack of probable cause.

**IV.**

The defendants' conduct, as found by the district court and construed in Evans's favor, violated a constitutional right that was clearly established. This inquiry is the other step of the qualified immunity analysis. *See Pearson,* 129 S. Ct. at 816, 822. The Supreme Court has made clear that the Fourth Amendment requires probable cause to arrest, *Beck*, 379 U.S. at 91, and this circuit has held the right to be clearly established, *e.g.*, *Donovan v. Thames*, 105 F.3d 291, 297-98 (6th Cir. 1997). This right was also clearly established in the "more particularized . . . sense" required by cases like *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). We held, for instance, in *Parsons* that arrest without sufficient inculpatory evidence violated a clearly established right. 533 F.3d at 504. More specifically, in *Swiecicki*, the plaintiff successfully alleged that his actions did not constitute a violation of a particular statute, making an arrest under the circumstances a violation of a clearly established Fourth Amendment right. 463 F.3d at 500; *see also St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005). Similarly in *Pourghoraishi*, where the facts alleged by the plaintiff showed that an element of the offense was missing, "no reasonable officer could have concluded that he had probable cause to arrest." 449 F.3d at 762. Where, as here, plaintiff alleges that sufficient inculpatory evidence was lacking about an element of the offense, "it would [have] be[en] clear to a reasonable officer that his conduct was unlawful in the situation he confronted," as required by the Supreme Court's analysis in *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

More particularity is not required, as it would mandate that this court find exactly what facts constitute probable cause for each specific statutory violation. "Pre-existing law need not address the very question at hand; rather, '[t]he contours of the right must be sufficiently clear.'" *Logsdon*, 492 F.3d at 343 (quoting *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 830

(6th Cir. 2007)). If precise specificity in the case law were required for a "clearly established" determination in highly fact-specific questions regarding probable cause decisions, the qualified immunity hurdle would be virtually impossible to get over.

Under these facts, defendants are not entitled to qualified immunity on summary judgment.

**V.**

The district court's denial of summary judgment is affirmed.