NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0111n.06

Case No. 23-3620

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Mar 11, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| ASHLEY M. MARRIOTT, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| DEPUTY JONATHAN PERSING; | ) | OHIO |
| SERGEANT JAMES TOUVILLE; | ) | |
| MAHONING COUNTY, OHIO, | ) | OPINION |
| Defendants-Appellees. | ) | |
| | ) | |

Before: GRIFFIN, NALBANDIAN, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Ashley Marriott sued Deputy Jonathan Persing, Sergeant James Touville, and Mahoning County, Ohio, under 42 U.S.C. § 1983, alleging she was arrested without probable cause. The district court granted summary judgment to the arresting officers and the county. Marriott appeals the grant of summary judgment to the arresting officers. For the reasons below, we affirm.

**I.**

At all relevant times, Deputy Jonathan Persing and Sergeant James Touville were employed with the Mahoning County Sheriff's Department.

The following facts are undisputed, as almost all of them come from Deputy Persing's and Sgt. Touville's bodycam footage. On June 5, 2020, Ashley Marriott and her ex-fiancé, Michael

Abbott, attended a horse show at the Canfield, Ohio, fairgrounds. Abbott came to watch Marriott participate in the horse show, even though she told him she did not want him there. When the two met up after the show at Marriott's trailer, they got into an argument. Marriott called 911 to report that Abbott was at the fairgrounds and would not leave her alone.

Deputy Persing arrived on the scene first, and Sgt. Touville quickly followed. Marriott told the officers that she just wanted them to make sure that Abbott left the fairgrounds. At Marriott's direction, the officers approached her trailer to find an intoxicated Abbott seated outside in a camping chair. While Abbott began to explain to the officers why he was at the fairgrounds, Deputy Persing noticed a bloody scratch on the left side of Abbott's neck. Abbott immediately asserted, "Oh this, this is her. This scratch mark, that's her," while pointing to the scratch. He then said, "The scratch marks that you're looking at, that's her. She grabbed me by the face. The scratch marks, that would be her." During his recounting of the events, he used his left hand to demonstrate how Marriott scratched him, and his motion was consistent with his injury. He also asked the officers to look at the right side of his neck because he thought there would likely be identical marks there. Marriott denied there had been any violence, to which Abbott retorted, "You didn't grab me by the face?"

Deputy Persing used a flashlight to look more closely at Abbott's scratch. Touville asked, "So she did that to you?" Abbott responded, "I won't say that," to which Touville replied, "You already said that." Sgt. Touville told Abbott that he already provided one explanation for the scratch and warned him that if he contradicted his prior accusation, he would be obstructing justice. Sgt. Touville again asked what happened, and Abbott responded there "was no domestic" and that he had done nothing wrong. Marriott then accused Abbott of throwing beer at her trailer and putting muffins inside, but upon Sgt. Touville privately asking her if Abbott threw anything at her

or committed any violence against her, Marriott denied that he did so. Sgt. Touville also asked Marriott about her relationship with Abbott, and she confirmed that they lived together as "man and wife."

With evidence that Marriott had scratched Abbott, confirmation that the two were domestic partners, and no indication that Marriott acted in self-defense, the officers decided they needed to arrest Marriott. As they placed Marriott in handcuffs, Abbott approached the officers and yelled that he "never said that" Marriott scratched him. Sgt. Touville asked Abbott if he had lied to him earlier, and Abbott responded, "I said, 'No, I wasn't going to say anything after that.'" Sgt. Touville explained to Abbott his earlier statements described conduct that constituted domestic violence, but Abbott simply retorted that he himself could not see the scratch marks on his neck.

Ohio prosecutors dropped Marriott's domestic-violence charge at Abbott's request. In 2022, Marriott sued Deputy Persing, Sgt. Touville, and Mahoning County under 42 U.S.C. § 1983, claiming the defendants violated her constitutional rights by arresting her without probable cause. The district court granted summary judgment in favor of all three defendants, holding that Deputy Persing and Sgt. Touville had probable cause to arrest Marriott, and that Marriott's *Monell* claim against Mahoning County necessarily failed because there was no underlying constitutional violation. Marriott timely appealed. On appeal, Marriott does not challenge the grant of summary judgment to Mahoning County.

## II.

We review grants of summary judgment de novo. *See Puskas v. Delaware Cnty.*, 56 F.4th 1088, 1093 (6th Cir. 2023). Summary judgment is appropriate when the evidence presented shows there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

**III.**

Section 1983 provides a vehicle for a person seeking to vindicate the violation of her constitutional rights. *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1159–60 (6th Cir. 2021). A plaintiff must prove two things to succeed on a § 1983 claim: (1) "a right secured by the United States Constitution," and (2) "the deprivation of that right by a person acting under color of state law." *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020) (citation omitted). The district court liberally construed Marriott's complaint as bringing a § 1983 claim for arrest without probable cause in violation of the Fourth Amendment.

The Fourth Amendment prohibits unreasonable seizures by police officers. U.S. Const. amend. IV. A warrantless arrest by an officer is reasonable if probable cause exists for the arrest. *Graves v. Mahoning Cnty.*, 821 F.3d 772, 776 (6th Cir. 2016). An arresting officer has probable cause "if the facts and circumstances" known to the officer "were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Arnold v. Wilder*, 657 F.3d 353, 363 (6th Cir. 2011) (alteration in original) (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)). In reviewing whether an officer had probable cause to make an arrest, courts look to "the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Generally, "the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (quoting *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)). But when, as here, the facts are undisputed, "the ultimate question of probable cause . . . is a question of law for the court and not a jury." *Gerics v. Trevino*, 974 F.3d 798, 805 (6th Cir. 2020). And when bodycam footage captures the event in question, we "view[] the facts in the light depicted by the videotape." *Green v. Throckmorton*,

681 F.3d 853, 859 (6th Cir. 2012) (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

In assessing whether there is probable cause to make an arrest, officers must "consider the totality of the circumstances." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). And officers cannot ignore "exculpatory evidence" when making their probable-cause determination. *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 279 (6th Cir. 2020). That said, officers do not need to "conduct quasi-trials." *Logsdon*, 492 F.3d at 342; *see Washington v. Napolitano*, 29 F.4th 93, 98 (2d Cir. 2022) ("[A]n officer is not required to investigate an individual's innocent explanations as to an alleged crime, nor to resolve all credibility issues between witnesses, before making an arrest based on probable cause.").

Deputy Persing and Sgt. Touville arrested Marriott for domestic violence. Ohio's domestic-violence statute provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Ohio Rev. Code Ann. § 2919.25(A). It also provides that a "[f]amily or household member" includes "a person living as a spouse." *Id.* § 2919.25(F)(1)(a)(i). And a "[p]erson living as a spouse" includes "a person . . . who . . . has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." *Id.* § 2919.25(F)(2). Ohio law further defines "[p]hysical harm to persons" as "any injury . . . regardless of its gravity or duration." *Id.* § 2901.01(A)(3).

Deputy Persing and Sgt. Touville had probable cause to arrest Marriott. The bodycam footage shows that once the officers began talking to Abbott, Deputy Persing noticed the bloody scratch on Abbott's neck. The scratch falls within the definition of "physical harm" under Ohio's domestic-violence statute. *See id.*; *State v. Hamrick*, 77 N.E.3d 467, 471 (Ohio Ct. App. 2017); *City of Cleveland Heights v. Brewer*, 673 N.E.2d 215, 216 (Ohio Ct. App. 1996) (per curiam).

Abbott immediately told the officers that Marriott caused the scratch. Abbott even demonstrated how Marriott scratched him, and his motions were consistent with those that would cause the scratch he sustained. Marriott also told the officers that she and Abbott had recently lived together as if they were married, meaning Abbott's "[f]amily or household member" had caused him harm. Ohio Rev. Code Ann. § 2919.25(F)(1)(a)(i); (F)(2). Marriott further confirmed that she and Abbott had been arguing, and while Abbott threw beer at her trailer, he never physically threatened her, eliminating a self-defense justification. This evidence was sufficient "to warrant a prudent man in believing that [Marriott] had committed" domestic violence. *Arnold*, 657 F.3d at 363.

Marriott's arguments to the contrary are unavailing. She argues that a jury could find that the officers turned a blind eye to potentially exculpatory evidence by refusing to listen to Abbott when he approached them after they placed Marriott under arrest "to insist that no domestic violence had taken place." D. 22 at p.4; *cf. Kentucky v. Young*, 51 F. App'x 543, 546–47 (6th Cir. 2002). But at that point, Deputy Persing and Sgt. Touville already had probable cause to arrest Marriott, so Abbott's insistence was of little importance. The officers had sufficient evidence that Marriott scratched Abbott. The law did not require them to reevaluate the credibility of Abbott's earlier statement that Marriott scratched him when he tried to recant it. *See Logsdon*, 492 F.3d at 342; *Washington*, 29 F.4th at 98. True, Abbott seemed to believe Marriott's scratches to his neck did not constitute domestic violence. But the video evidence shows the officers observing those scratches on Abbott's neck, and it shows Marriott confirming that she and Abbott had recently been domestic partners. So scratching Abbott on the neck was domestic violence under Ohio law, no matter how miniscule the resultant injury. *See* Ohio Rev. Code Ann. § 2919.25(A). It does not matter whether Abbott felt violated or whether he believed Marriott committed a crime. *See Logsdon*, 492 F.3d at 341; *Green*, 681 F.3d at 859.

Marriott also argues that this case is comparable to *Wesley v. Campbell*, 779 F.3d 421 (6th Cir. 2015). In *Wesley*, we reversed the district court's dismissal of a § 1983 case alleging false arrest when the arrestee pleaded that the officer arrested him based only on a child's uncorroborated eyewitness allegation. *Id.* at 429–30. But this case is not like *Wesley*. Here, along with Abbott's direct accusation, the officers saw a physical injury that was consistent with Abbott's allegations in the context of the couple arguing.

This case more closely resembles *Thacker v. City of Columbus*, 328 F.3d 244 (6th Cir. 2003). There, we affirmed summary judgment for the officers when the arrestee was arrested for domestic violence despite the victim's "thrice-changing explanations" and an injury from days prior. *Id.* at 256–57. Here, Abbott recanted his accusation only once, while offering no alternative explanation (and only after it became clear the officers intended to arrest Marriott), and his injury was fresh, giving the officers here even more reason to believe Marriott committed a crime than the officers had in *Thacker*.

Marriott further contends that a "reasonable juror could conclude that Deputy Persing and Sgt. Touville were actively seeking some reason to" arrest her. D. 22 at p.10. But the Supreme Court has repeatedly held that an officer's "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Arkansas v. Sullivan*, 532 U.S. 769, 772 (2001) (per curiam) (alteration in original) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)). If probable cause exists, the officers' motives would not "invalidate an otherwise lawful arrest." *Hartman v. Thompson*, 931 F.3d 471, 482 (6th Cir. 2019).

## IV.

For these reasons, we **AFFIRM** the district court's judgment.