NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0427n.06

No. 09-6205

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Apr 17, 2012*
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| TIMOTHY D. ROUSE, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| TERRY POWLDE, Police Officer, BENNEY | ) | |
| DUNCCAN, Police Officer, Fulton City Police | ) | |
| Department, RICHARD L. MAJORS, District | ) | On Appeal from the United |
| County Attorney, Fulton County Attorney | ) | States District Court for the |
| Office, JAILER PARNELL, | ) | Western District of Kentucky |
| | ) | |
| Defendants, | ) | |
| v. | ) | OPINION |
| | ) | |
| MICHAEL B. STACY, Commonwealth | ) | |
| Attorney, Fulton County Circuit Court, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Before: **MCKEAGUE, ROGERS**, and **DONALD**[*], Circuit Judges.

**Donald**, Circuit Judge.   Plaintiff-Appellee Timothy D. Rouse filed a *pro se* complaint

pursuant to 42 U.S.C. § 1983 against Defendants Fulton County Police Chief Terry Powlde,[1] Fulton

County police officer Benney Dunccan, Commonwealth Attorney Michael B. Stacy, Assistant

County Attorney Richard L. Majors, and Fulton County jailer Ricky Parnell.[2]   Rouse alleged in his

---

[*]   At the time this case was argued, Judge Bernice B. Donald was a federal district court judge, sitting by designation. On September 8, 2011, Judge Donald became a judge of the Sixth Circuit Court of Appeals.

[1]  The record indicates that the correct spelling is "Powell."

[2]  Majors was sued in his official capacity. The remaining defendants were sued in both their individual and official capacities. Powell, Dunccan, Majors, and Parnell settled the claims against them.

complaint that while he was in jail awaiting trial prosecutor Michael Stacy directed an attack on Rouse by his jailer for the purpose of persuading Rouse to change his plea to guilty.

On September 25, 2008, Stacy filed a motion to dismiss. On September 28, 2009, the district court granted the motion in part by (1) dismissing the official capacity claims against Stacy as barred by the Eleventh Amendment and (2) dismissing without prejudice, based on *Heck v. Humphrey*, 512 U.S. 477 (1994), the individual capacity claim alleging that Rouse was denied a fair trial. The district court denied the motion as to Rouse's excessive force claim, rejecting Stacy's assertion of absolute immunity. On October 1, 2009, Stacy filed this appeal. We now AFFIRM the district court's ruling.

## I. BACKGROUND

Rouse was indicted in March 2006 on charges of first-degree burglary, first-degree robbery, and first-degree assault. *Rouse v. Commonwealth*, No. 2010-CA-000291-MR, 2010 WL 3362057, at *1 (Ky. Ct. App. Aug. 27, 2010). Rouse alleges that while he was incarcerated in the Fulton County Detention Center awaiting his August 21, 2007 trial, Stacy called the jailer on his cell phone during a court hearing and told him that Rouse had not pled guilty, so the jailer should "do it tonight." Rouse states that Stacy wanted "to do his best to get Rouse to plea (sic) guilty" to the charges against him. Around 2:00 a.m. the following morning, the jailer and two detention guards allegedly entered Rouse's cell, smothered him with a pillow, "busted his face" against an intercom, and choked him with a string. While walking out of Rouse's cell, the jailer told Rouse that next time he should plead guilty.

No. 09-6205
*Rouse v. Powdle, et al.*

During the first day of trial, Rouse changed his plea to guilty as part of a plea agreement with Stacy. *Rouse*, 2010 WL 3362057, at *1. Prior to sentencing, Rouse moved to withdraw his guilty plea on the grounds that he was unaware that the violent offender probation and parole restrictions would require him to serve at least 85% of his sentence if he pled guilty. *Id.* at *1 n.3; *Rouse v. Commonwealth*, No. 2007-CA-002020-MR, 2008 WL 4092869, at *1 (Ky. Ct. App. Sept. 5, 2008), *cert. denied*, 130 S. Ct. 120 (2009). The trial court denied Rouse's motion to withdraw his guilty plea and sentenced him to 27 years in prison in accordance with the plea agreement. *Rouse*, 2008 WL 4092869, at *2. The Kentucky Court of Appeals affirmed the denial of the motion. *Id.*

## II.  ANALYSIS

### A.  STANDARD OF REVIEW

To the extent that it turns on an issue of law, a district court's denial of a claim of immunity, whether qualified or absolute, is immediately appealable. *Mitchell v. Forsyth,* 472 U.S. 511, 525, 530 (1985); *Archie v. Lanier,* 95 F.3d 438, 442 (6th Cir. 1996). The denial of a motion to dismiss based on absolute immunity is subject to *de novo* review. *Koubriti v. Convertino*, 593 F.3d 459, 466 (6th Cir. 2010); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997).

### B.  THE SCOPE OF PROSECUTORIAL IMMMUNITY

Although prosecutorial immunity has a longstanding tradition in the common law, the *Imbler v. Pachtman* decision was the Supreme Court's first explicit recognition that prosecutors enjoy absolute immunity from § 1983 suits for damages when they act within the scope of their prosecutorial duties. 424 U.S. 409, 420 (1976). Derivative of the immunity afforded judges, this prosecutorial, or "quasi-judicial," immunity has been revisited and refined in numerous Court

3

opinions in the thirty-five years since *Imbler*. The *Imbler* Court emphasized that prosecutorial immunity is not predicated upon status, titles, or special regard for a particular branch of government. *Imbler,* 424 U.S. at 420. It is based, rather, on public policy considerations, particularly the concern that "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decision instead of exercising the independence of judgment required by his public trust." *Id*. at 423. In a later decision, the Court expressed the rationale supporting such immunity as follows:

> As public servants, the prosecutor and the judge represent the interest of society as a whole. The conduct of their official duties may adversely affect a wide variety of different individuals, each of whom may be a potential source of future controversy. The societal interest in providing such public officials with the maximum ability to deal fearlessly and impartially with the public at large has long been recognized as an acceptable justification for official immunity.

*Ferri v. Ackerman* 444 U.S. 193, 202-03 (1979).

The Court has recognized, however, that the granting of such immunity is not without its costs, noting that "unfairness and injustice to a litigant may result on occasion." *Mireles v. Waco*, 502 U.S. 9, 10 (1991) (citing *Bradley v. Fisher*, 80 U.S. 335, 347 (1872)). This downside risk is mitigated, according to the Court, by "[v]arious post-trial procedures . . . to determine whether an accused has received a fair trial," including "the remedial powers of the trial judge, appellate review, and state and federal post-conviction collateral remedies." *Imbler*, 424 U.S. at 427. The Court has also emphasized that there remain effective checks on misconduct by prosecutors, notwithstanding their immunity from civil suits, including criminal prosecution and professional discipline. *Burns v. Reed*, 500 U.S. 478, 486 (1991) (citing *Imbler*, 424 U.S. at 429).

In view of the risk of injustice, the Supreme Court has been "quite sparing" in its recognition of the doctrine of absolute immunity, and it has declined to extend it any "further than its justification would warrant." *Id.* at 486 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 811 (1982)). The Court has further constrained the reach of the doctrine in its ruling that "[t]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993) (citing *Burns,* 500 U.S. at 486).

In delineating the scope of its holding, the *Imbler* Court focused on whether the prosecutor's activities at issue "were functions to which the reasons for absolute immunity apply with full force." *Imbler*, 424 U.S. at 430. The Court found that prosecutorial immunity shielded a prosecutor from suit under § 1983 for conduct in "initiating a prosecution and in presenting the State's case," so long as that conduct is "intimately associated with the judicial phase of the criminal process." *Id.* at 430, 431. The Court expressly declined to decide whether absolute immunity should also apply to other functions, such as "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer." *Id.* at 430-31. This emphasis on function has guided the Court's discussion of absolute immunity in the many cases that have followed.

In *Burns*, the Court reexamined the issue of immunity for prosecutorial investigations. 500 U.S. at 486 (1991). *Burns* "made explicit the point [the Court] had reserved in *Imbler*: A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273 (citing *Burns*, 500 U.S. at 494-96). The Court determined that absolute immunity did not apply to a prosecutor giving legal advice to police, on

5

grounds that there was no historical or common-law support for extending absolute immunity in such cases. *Burns*, 500 U.S. at 492. Applying the functional approach it had developed in *Imbler*, the Court declared that advising police in the investigative phase of a criminal case was not "intimately associated with the judicial phase of the criminal process." *Id.* at 493. In reaching this conclusion, the Court underscored the rationale underlying the absolute immunity doctrine, as well as its limits:

> [It] is not merely a generalized concern with interference with an official's duties, but rather is a concern with interference with the conduct closely related to the judicial process. Absolute immunity is designed to free the *judicial process* from the harassment and intimidation associated with litigation. That concern therefore justifies absolute prosecutorial immunity only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct.

*Id.* at 494 (internal citations omitted) (emphasis in original).

Similarly, in *Buckley* the Court determined that a prosecutor was not entitled to absolute immunity for his alleged misconduct in a criminal investigation or for false statements made to the media during a public announcement of the indictment. 509 U.S. at 273. Central to the Court's analysis of the former was the "difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial . . . and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested." *Id.* Echoing the *Burns* observation quoted above, the Court stated, "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that for the same act, immunity should protect the one and not the other.'" *Id.* (quoting *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973)). And "[w]hen the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also

the same." *Id*. at 276. Further, the prosecutor was not entitled to absolute immunity for his actions

at the press conference because he was not acting as an advocate, there was no historical tradition

of immunity for this function, and qualified immunity would provide sufficient protection. *Id.* at

277-78.

The Court also applied the *Imbler* functional analysis in a case addressing whether the

prosecutor was acting as a witness or as an advocate when she executed an affidavit under penalty

of perjury. *Kalina v. Fletcher*, 522 U.S. 118 (1997). The plaintiff alleged that the prosecutor made

false statements of fact in an affidavit supporting an application for an arrest warrant. *Id.* at 129.

The Court noted that the prosecutor was not required to provide the affidavit and that ethics and

tradition instruct that counsel should avoid acting as both an advocate and a witness in the same

proceeding. *Id.* at 129-30. The Court concluded that the prosecutor was not entitled to absolute

immunity for performing the function of a witness. *Id.* at 131.

The Supreme Court's most recent analysis of prosecutorial immunity came in *Van de Kamp*

*v. Goldstein*, 555 U.S. 335 (2009). The plaintiff alleged that prosecutors violated his civil rights by

failing to engage in the administrative activities of instituting and adequately supervising a system

of information-sharing about informants. *Id.* at 339, 342. This failure allegedly resulted in a *Giglio*[3]

violation at the plaintiff's criminal trial. *Id*. The Court held that, while administrative in nature, the

obligations at issue "necessarily require legal knowledge and the exercise of related discretion," are

---

[3] *Giglio v. United States*, 405 U.S. 150 (1972) (requiring disclosure of promises made to government witness for their cooperation).

"intimately associated with the judicial phase of the criminal process," and, therefore, warrant

absolute immunity for the prosecutors. *Id.* at 862-64.

*****

The *Imbler* functional analysis, combined with the Court's various holdings on specific

prosecutorial functions described above, provides a proper foundation for determining whether the

facts of the present case support a finding of prosecutorial immunity. The factual allegations at issue

are:[4]

> While awaiting trail[5] (prosecutor) Mike Stacey had the jailer to assault Rouse, and intimidate his defense witnesses, to prevent them from testifying at trail.

***

> During a hearing at the court house Defendant Stacey called Jailer Parnell on his cell phone and said "Plaintiff did not plea guilty, so do it tonight." The same night around about 2: am the jailer and two unknown detention guards came into Plaintiff cell while he was sleep and smutter him with a pillow, busted his face on a speaker intercom inside the cell, and tied a string around his throat chocking Plaintiff until he cried leaving him soacked in blood. While the jailer was walking out and said next time plea guilty.

***

> Defendant Stacey called the jailer on his cell phone from the court house and had the jailer to use "force" in order to make Plaintiff plead guilty. Defendant Stacey told the jailer, Rouse didn't plead guilty so do it tonight. The same night around 2 am the jailer and two unknown guards came into Rouse's cell, tied a string aound his neach, chocking him until he cried, busted his face on a intercom, smuttering him with a pillow and leaving him soacked in blood. On their way out of cell, jailer said next time "plead guilty."

---

[4] The allegations come from the complaint, pretrial memorandum, and the memorandum in support of the pretrial memorandum, respectively.

[5] Rouse's handwritten statements, replete with unusual spellings, are presented here as faithfully to the original as practicable.

In his response to these allegations, Stacy, invoking *Imbler*, declares that his alleged conduct was part of "negotiating a plea agreement." Because plea bargaining is a "quasi-judicial" function, Stacy argues, he is absolutely immune from suit for his alleged actions, however "illegal and reprehensible" they may have been.

In Rouse's brief, contrary to his own statements in the complaint and pretrial memoranda, he asserts that the facts indicate that Stacy ordered the assault on him as punishment for past behavior. Rouse further argues that even if the assault was intended to induce a guilty plea, it would still not constitute protected plea bargaining. Finally, Rouse asserts that, although formal categorization is unnecessary, Stacy's actions should be deemed "administrative, investigative or other function," rather than prosecutorial advocacy.

We first reject out of hand any characterization of Stacy's conduct as either investigative or administrative. There is no allegation in the record that Stacy was "investigating" anything in having Rouse beaten. And while punishment or discipline of a prison inmate might be deemed an administrative function of a prison warden, it is not an administrative function of a prosecutor. If he did in fact engage in either punishment or discipline, he was not performing the administrative duties of a prosecutor, but rather was acting entirely outside the scope of the duties of a prosecutor.

Furthermore, it would be inappropriate here to engage in "judicial scrutiny of the motives for the prosecutor's actions." *Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir. 1997); *Robison v. Via,* 821 F.2d 913, 920 (2d Cir. 1987) (In "the realm of absolute immunity . . . evaluation of motive and reasonableness is forbidden."). "[A] judicial act 'does not become less judicial by virtue of an allegation of malice or corruption of motive.'" *Mireles v. Waco*, 502 U.S. 9, 13 (1991) (quoting

9

*Forrester v. White*, 484 U.S. 219, 227 (1988). The converse of this maxim must also be true: an act does not become more judicial by claiming a worthy motive. Because "[i]t is the nature of the function performed . . . that inform[s] our immunity analysis," we decline to ponder the motive behind the alleged assault and battery. *Forrester*, 484 U.S. at 229.[6] Whether the act was meant to punish Rouse or to persuade him to change his plea, "we look to the [act's] relation to a general function normally performed by a [prosecutor]" to determine the applicability of prosecutorial immunity. *Mireles*, 502 U.S. at 13.

Stacy claims that the alleged assault was part of plea bargaining, a recognized prosecutorial function. Rouse asserts that it was not. This deceptively simple disagreement represents the core issue in this appeal.

## C. PROSECUTORIAL IMMUNITY AND PLEA BARGAINING

This Court and others have applied the *Imbler* functional approach to prosecutorial immunity in a number of cases involving plea bargaining. The resulting body of case law, without exception, expresses the principle that plea bargains are "so intimately associated with the prosecutor's role as an advocate of the State in the judicial process as to warrant absolute immunity." *Cady v. Arenac County*, 574 F.3d 334, 341 (6th Cir. 2009); *See also Cole v. Smith*, 1999 WL 685940, at *2 (6th Cir. Aug. 24, 1999) ("The plea bargain takes the place of a trial. Conduct associated with plea bargaining is clearly not administrative or investigative."); *Doe v. Phillips*, 81 F.3d 1204, 1210 (2d Cir. 1996)

---

[6] The dissent devotes considerable space to Rouse's allegations that Stacy's intent was to persuade him to change his plea to guilty. We note that Rouse's statements about the thoughts and intentions of Stacy are not facts but mere speculation, warranting no particular regard by the Court. More importantly, as the case law cited throughout this discussion establishes, the prosecutor's motives play no part in an immunity analysis.

("[T]he negotiation of a plea bargain is an act within a prosecutor's jurisdiction as a judicial officer."); *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1492 (10th Cir. 1991); *Taylor v. Kavanagh*, 640 F.2d 450, 453 (2d Cir. 1981) ("[A] prosecutor's activities in the plea bargaining context merit the protection of absolute immunity. The plea negotiation is an 'essential component' of our system of criminal justice."). Thus, it is beyond question that a prosecutor's plea bargaining activities, regardless of motive, warrant absolute immunity.

But merely attaching the label of "plea bargaining" to a prosecutor's actions does not by itself end the immunity inquiry. There are established limits to the application of prosecutorial immunity, and these limits are pertinent to plea bargaining as well as other prosecutorial functions. The Supreme Court has long recognized that such immunity does not protect a prosecutor for actions clearly beyond his authority. *Spalding v. Vilas,* 161 U.S. 483, 498 (1896); *see also Stump v. Sparkman*, 435 U.S. 349, 357 (1978) (holding that an official has no absolute immunity when he has acted in the "clear absence of all jurisdiction"). As the Second Circuit has observed, "where a prosecutor acts without any colorable claim of authority, he loses the absolute immunity he would otherwise enjoy." *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987). Otherwise, a prosecutor could immunize himself from suit for any manner of wrongdoing by merely claiming that it was "related" to a legitimate prosecutorial duty.

A number of courts have wrestled with prosecutorial misconduct similar to that alleged in this case and have found such conduct outside the scope of a prosecutor's legitimate duties. In *Doe v. Phillips*, the Second Circuit confronted a claim of prosecutorial immunity involving a demand by a prosecutor that the accused swear to her innocence on a bible in a church as a condition of

11

dropping charges that she had sexually abused her son. 81 F.3d 1204 (2d Cir. 1996), *cert. denied,* 520 U.S. 1115 (1997). Similar to the present case, the prosecutor argued that his decisions and actions in disposing of the charges against the defendant "were integrally related to the judicial phase of the prosecution of the pending criminal charges" and "should therefore be afforded absolute prosecutorial immunity." *Doe v. Phillips*, 1995 WL 17202518, Appellant Br. at 1 (2d Cir. October 9, 1995). The court rejected the prosecutor's framing of the issues and held that the prosecutor's plea bargaining conduct was not protected by prosecutorial immunity.

The court's reasoning in *Phillips* is instructive. In a prior case, *Schloss v. Bouse*, the Second Circuit had recognized that absolute immunity extends to a prosecutor's offer to forgo prosecution in exchange for certain types of concessions by the defendant. 876 F.2d 287, 292-93 (2d Cir. 1989). In that case, a prosecutor had offered the defendants an agreement not to prosecute in return for the execution of releases in favor of various municipal entities. *Id.* The court held that "the demand for releases and the threat to prosecute were interdependent" and the demand was not "foreign to the prosecutor's office." *Id.* at 291-92. This plea bargain was, therefore, within the prosecutor's jurisdiction and protected by prosecutorial immunity. *Id.* at 292.

The *Phillips* court contrasted the facts before it with those presented in *Schloss* and determined that "the intertwined conduct was the demand for a religious oath on a bible in a church." *Phillips*, 81 F.3d at 1210. Because a governmental official has no authority to require a religious act, the court concluded that the prosecutor's demand "was manifestly beyond his authority," and was thererfore not protected by prosecutorial immunity. *Id.* at 1211. Although the conduct at issue was plainly related to a plea bargain of sorts, the court rejected the notion that a prosecutor "may with

12

impunity couple a threat of prosecution with all manner of demands, for example, demands for bribes or sexual favors. A government official does not have absolute immunity for acts that are manifestly or palpably beyond his authority, . . . or performed in the clear absence of all jurisdiction." *Id.* at 1210. "If the prosecutor has acted without any colorable claim of authority . . . his conduct is not protected by absolute immunity." *Id.*

Thus, while fully embracing the functional approach of *Imbler*, as well as the general principle that "the negotiation of a plea bargain is an act within a prosecutor's jurisdiction as a judicial officer" protected by absolute immunity, the court distinguished between a prosecutor's negotiated exchange based upon legitimate prosecutorial authority and an exchange without any such basis. This principled distinction provides a compelling basis upon which to analyze the facts of the present case.

Assume, for the sake of argument, that the alleged assault and battery of Rouse was, in the view of the prosecutor, a direct extension of his frustrated efforts to secure a guilty plea from Rouse, and that his sole purpose in ordering the beating was to persuade Rouse to change his plea. The bargain at issue would then be properly characterized as follows: the prosecutor would refrain from further beating in exchange for Rouse's entering a plea of guilty. Just as the prosecutor in *Phillips* lacked any authority to bargain for the defendant's committing a religious act (or sexual act or payment of money), prosecutor Stacy had no authority to use as a bargaining tool the threat of repeated beatings. From this light, it is clear that Rouse's beating cannot be viewed as immunized conduct because, although it clearly related to plea bargaining, it is not conduct within the scope of Stacy's legitimate prosecutorial "jurisdiction."

13

Alternatively, if the purpose of the beating, as Rouse belatedly claims in his brief, was to punish Rouse for failing to plead guilty in the past rather than to influence his future behavior, the case for prosecutorial immunity has even less merit, as the dissent acknowledges. The Eighth and Ninth Circuits have dealt most extensively with prosecutorial conduct of a punitive nature. In *Price v. Moody*, the plaintiff alleged that the prosecutor personally ordered him jailed in a dirty cell "without lights, ventilation, a mattress or a blanket," "infested with roaches and bugs," and without food, water or showers during a four day period. 677 F.2d 676, 676-77 (8th Cir. 1982). The Eighth Circuit held that "it can hardly be asserted that [the] charged actions were within the scope of prosecutorial duties. . . [A] prosecutor has no power or authority to order a prisoner to be subjected to barbaric treatment." *Id.* at 678; *See also Phillips v. Kiser*, 2006 WL 721818 (8th Cir. Mar. 23, 2006) (finding that allegations that prosecutor ordered defendant transferred and placed in solitary confinement to punish him were not subject to absolute immunity); *Gobel v. Maricopa County*, 867 F.2d 1201, 1206 (9th Cir. 1989) ("prosecutors are not entitled to absolute immunity on the claim that they illegally punished [defendants] during their post-arrest detention"); *Smith v. Updegraff*, 744 F.2d 1354, 1364 (8th Cir. 1984)(holding that ordering confinement of defendant under barbaric conditions was outside the scope of prosecutorial duties). The foregoing body of case law can be summarized as holding, in the language of *Imbler*, that the function of punishment is not protected prosecutorial conduct because it is not "intimately associated with the judicial phase of the criminal process." 424 U.S. at 431. Alternatively, in the language of *Phillips*, it is unprotected because punishment is "manifestly or palpably beyond [the prosecutor's] authority, . . . performed in the clear absence of all jurisdiction." 81 F.3d at 1210.

Ultimately, it is of no consequence whether the beating of Rouse is more accurately described as punitive or coercive. Regardless of its characterization, and regardless of whether we accept that Stacy's conduct was "related" to plea bargaining, by any objective view of the matter Stacy was not acting within the legitimate scope of his prosecutorial authority or jurisdiction in ordering the beating of Rouse. He therefore has no valid claim to prosecutorial immunity.

Stacy's brief does not address the above cases limiting the application of prosecutorial immunity, but calls the court's attention instead to the Supreme Court's *Mireles v. Waco* decision as dispositive of his claims on appeal. In *Mireles*, a summary reversal of the lower court rendered *per curiam* without briefing or argument, the Court held that a judge was absolutely immune from suit for allegedly ordering police officers to use excessive force to bring an attorney to court on grounds that the judge's actions were taken in his judicial capacity. 502 U.S. 9 (1991). Stacy argues that "[j]ust as the judge in *Mireles* was performing a judicial function, Michael B. Stacy was performing a prosecutorial function in seeking to induce Mr. Rouse to plead guilty to the charges against him." Stacy concludes, therefore, that "prosecutorial immunity attaches to his action of allegedly directing the jailer."

The *Mireles* Court explained that "[a] judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge." *Mireles*, 502 U.S. at 12. If the judge "authorized and ratified the police officers' use of excessive force, he acted in excess of his authority." *Id.* at 13. Nevertheless, the "nature of the function performed" was "judicial" and was therefore within his capacity as a judge and within his jurisdiction. *Id.* "If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because

15

the action he took was in error . . . or was in excess of his authority.'" *Id.* at 12-13 *(*quoting *Stump*

*v. Sparkman*, 435 U.S. 349, 356 (1978).

The *Mireles* analysis might be summarized, in its most concise form, as follows:

**Function**:  directing court officers to bring a person before judge.

**Nature of the function**:  judicial, because normally performed by judge.

**Manner in which function was performed**:  irrelevant, even if improper, because a judicial function is immune from suit regardless of the manner performed.

Stacy would have the Court find, applying a parallel formulation, that his act was part of the

negotiation of Rouse's plea, undeniably a "general function normally performed" by a prosecutor.

In other words:

**Function**:  plea negotiation.

**Nature of the function**:  prosecutorial, because normally performed by prosecutor.

**Manner in which function was performed**:  irrelevant, even if improper, because a prosecutorial function is immune from suit regardless of the manner performed.

What is amiss about this application of the *Mireles* analytical structure is that in place of an

objective description of the function performed is a mere label, at best describing alleged intent but

not the actual function performed.  As previously discussed, it is not the court's proper role to inquire

into the motives behind the prosecutor's actions.  *Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir.

1997).  The court looks only to the objective nature of the act itself.  Viewed objectively, without

16

regard to allegations of motive or intent, the function at issue is the prosecutor's ordering the beating of the defendant.

We need not labor over the precise characterization of the nature of this function. It suffices to recognize the obvious: that ordering a beating is not a function normally performed by a prosecutor. Thus, the present case would be more aptly summarized as follows:

> **Function**: Directing jailers to beat defendant.
>
> **Nature of the function**: non-prosecutorial, because not normally performed by prosecutor.
>
> **Manner in which function was performed**: potentially relevant, because function is not immune from civil suit.

Negotiating a plea is certainly among a prosecutor's most general functions. If, however, a prosecutor attempts to influence the outcome of those negotiations by engaging in separate non-prosecutorial functions, he abandons any claim to the immunity which would otherwise attach to the performance of his duties.

It is certainly likely that beating a defendant would influence the outcome of plea negotiations, but so might beating his wife, kidnapping his children, or burning a cross on his lawn. The fact that a non-prosecutorial action influences plea bargaining does not make the action itself plea bargaining. Attaching a plea bargaining label to such conduct is insufficient to warrant prosecutorial immunity when such conduct is plainly outside of the prosecutor's legitimate authority.

Altering the facts somewhat from *Mireles* to make it more closely resemble the present case further underscores the flaw in Stacy's immunity claim. Consider the following fictitious scenario: a judge is frustrated with a witness at trial. The witness is disrespectful of the judge and generally

belligerent and uncooperative. The witness's testimony is to continue the next day, so, as a precaution, the judge hires a couple of thugs to go to the witness's house and rough him up with the warning that "he better behave himself tomorrow." The witness sues the judge, and the judge claims immunity from suit on grounds that he was acting in his judicial capacity by maintaining order in his courtroom, a function normally performed by a judge.

The problem with the judge's immunity claim in this far-fetched hypothetical is the same problem presented by Stacy's claim: although the act was intended to impact an area within his judicial capacity, maintaining order in the courtroom, the judge acted "without any colorable claim of authority" in ordering thugs to batter the witness. This is not a function normally performed by a judge. His conduct would thus not be protected by absolute immunity.[7]

It is equally revealing to alter the facts of the present case to make it more directly parallel to *Mireles*. Consider a prosecutor in the heat of face-to-face plea negotiations with a defendant. Exasperated by the defendant's stubbornness, the prosecutor reaches across the table and grabs the defendant out of his seat by the collar, curses at him and yells in a rage, "Do you hear what I'm saying?! You're gonna lose. You're gonna rot in jail! You're gonna grow old and die there, never see your kids grow up, never be with your wife again . . . if you don't take the deal I'm offering you," then throws him to the floor. Such behavior would be a deplorable, demoralizing abuse of the prosecutor's authority, potentially subject to professional sanction and even criminal prosecution.

---

[7] An even simpler alteration would be to assume that the judge in *Mireles* merely ordered the attorney beaten by the officers, to "teach him a lesson." The outcome would be the same as in this more complicated hypothetical: the function becomes "ordering the lawyer beaten." Even though the judge might perhaps argue his motive was "promoting appropriate respect for the court," the bottom line is that the objective function at issue is the beating of a lawyer, which is not judicial in nature and therefore not protected by absolute immunity.

The abusive conduct described is, however, performed in the course of plea negotiations, a function normally performed by a prosecutor, in which a prosecutor offers concessions regarding the charges brought against the defendant in return for a guilty plea. Consequently, under the functional scheme set forth in *Imbler* and applying the reasoning of both *Phillips* and *Mireles,* the prosecutor's improper actions are unquestionably protected by absolute immunity from civil suit.

This distinction between acting in a prosecutorial capacity but in excess of authority, on the one hand, and acting "without any colorable claim of authority," on the other, may appear nebulous when expressed in the abstract. When, however, it is applied to the facts of *Mireles*, to the above hypotheticals, or to the present case, the distinction is both clear and eminently workable. The ordering of a brutal, late-night beating of a sleeping prisoner in his cell by three prison guards outside of the presence of anyone remotely involved in negotiating a plea, for whatever reason, is not the exercise of simple misjudgment or excessive zeal in the performance of a prosecutor's normal duties, which would be shielded by the doctrine of prosecutorial immunity. If he engaged in such conduct, Stacy abandoned any claim of prosecutorial authority and with it the immunity that accompanies such authority.

### III. CONCLUSION

In the *Philips* and *Mireles* decisions, the Second Circuit and the Supreme Court, respectively, provided useful, closely-related frameworks for solving the prosecutorial immunity puzzle which this case presents. Under *Phillips,* we look to whether the prosecutor acted within his legitimate authority when he "plea bargained" with the threat of a brutal beating as a bargaining chip. Under *Mireles*, we look to the objective nature of the function at issue to determine whether the conduct

was "prosecutorial." Both of these methodologies lead to the conclusion that the prosecutor in this case has no valid claim to absolute immunity for the alleged beating of the defendant. "Officials who seek exemption from personal liability have the burden of showing that such an exemption is justified by overriding considerations of public policy," *Forrester v. White*, 484 U.S. 219, 224 (1988), and Stacy has not met this burden. To attach absolute immunity to his alleged actions would be to extend the doctrine much "further than its justification would warrant." *Burns v. Reed*, 500 U.S. 478, 486 (1991).

With this decision, the Court reaffirms its commitment to the broad policy interests favoring prosecutorial discretion as articulated in *Imbler* and its progeny, declining only to shield conduct, such as that alleged here, that is distinctly contrary to the principles set forth in the established case law. The district court's denial of Defendant's Motion to Dismiss on prosecutorial immunity grounds is AFFIRMED.

No. 09-6205
*Rouse v. Powdle, et al.*

**McKEAGUE, Circuit Judge, dissenting.** I must respectfully dissent from the majority because I find that the prosecutor's actions, however egregious, are protected by absolute immunity because they were performed in the course of plea bargaining, a role intimately associated with the prosecutor's role as an advocate of the State.

As the majority acknowledges, the absolute immunity analysis turns on the function performed, not the act itself. *See Mireles v. Waco*, 502 U.S. 9, 13 (1991) ("[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.'") (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). We agree that the functions protected are those "intimately associated with the judicial phase of the criminal process"—those, in other words, where the prosecutor acts as an advocate of the State. *See Imbler v. Pachtman*, 424 U.S. 409, 430, 431 n.33 (1976); *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1993). Finally, we agree that plea bargaining falls within the protected prosecutorial function of advocating for the State. *Cady v. Arenac Cnty.*, 574 F.3d 334, 341 (6th Cir. 2009) ("Conduct associated with plea bargains has long been held by this court to be 'so intimately associated with the prosecutor's role as an advocate of the State in the judicial process as to warrant absolute immunity.'") (quoting *Cole v. Smith*, No. 97-5964, 1999 WL 685940, at *2 (6th Cir. Aug. 24, 1999) (unpublished)).

Notwithstanding the foregoing, the majority then promptly looks to the misconduct itself, rather than the function performed, to determine that absolute immunity does not lie. In doing so, the majority relies on non-binding authority from the Second Circuit while contravening the well-established, binding principles set out by the Supreme Court. The majority reasons that the prosecutor's action here is not immune because it went beyond the "legitimate scope of his

21

prosecutorial authority or jurisdiction," as "ordering a beating is not a function normally performed by a prosecutor." That ordering a beating is outside a prosecutor's legitimate authority and not normally performed by a prosecutor is undoubtedly true but so is suborning false testimony, fabricating evidence, and threatening witnesses—prosecutorial abuses which have all been held absolutely immune from civil damages liability because the function of the activities was within the prosecutor's role as an advocate of the State. *See Imbler*, 424 U.S. at 413, 430 (granting absolute immunity to prosecutor who allegedly knowingly used false testimony and suppressed material evidence at trial); *see Beckett v. Ford*, 384 F. App'x 435, 451–52 (6th Cir. 2010) (finding the prosecutor absolutely immune from claims that he threatened witnesses, knowingly presented false testimony, and framed the plaintiff for murder); *Heidelberg v. Hammer*, 577 F.2d 429, 433 (7th Cir. 1978) (finding claims that prosecutors destroyed and falsified evidence and suborned perjury barred by absolute immunity). As our sister circuit has aptly stated, "[I]mmunity that applies only when the defendant did no wrong is no immunity at all." *Millspaugh v. Cnty. Dep't of Pub. Welfare of Wabash Cnty.*, 937 F.2d 1172, 1175 (7th Cir. 1991).

Thus, I find this case squarely controlled by *Mireles v. Waco*, 502 U.S. 9 (1991). While the judge's act in that case—ordering police officers "to forcibly and with excessive force seize and bring plaintiff into his courtroom"—exceeded his judicial authority, the Court reiterated that the immunity inquiry must focus on the function and not the act. *Mireles*, 502 U.S. at 10. Otherwise, absolute immunity becomes no immunity at all:

> [I]f only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge. If

22

> judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.

*Id*. at 12-13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)) (omission in original).

Accordingly, the Court focused on the function performed by the judge—directing police officers to bring counsel in a pending case before the court—and determined that such function was taken in the judge's judicial capacity and thus protected by judicial immunity. *Id*.; *see also Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (reversing two of its prior decisions that "construed the immunity doctrines too narrowly by focusing on underlying actions instead of looking to ultimate acts.").

The proper question then, according to *Mireles*, is whether action taken for the purpose of procuring a plea is a prosecutorial function "intimately associated with the judicial phase of the criminal process" that warrants absolute immunity. *Imbler*, 424 U.S. at 430. The answer is a well-established yes. *See, e.g.*, *Cady*, 574 F.3d at 341; *Powers v. Zimmerman*, No. 96-6434, 1997 WL 704944, at *1 (6th Cir. Nov. 6, 1997) (unpublished) (holding that a prosecutor was absolutely immune to a claim that he maliciously brought a rape charge to force the plaintiff to plead guilty to an unrelated charge); *see also Bresko v. John*, 87 F. App'x 800, 803 (3d Cir. 2004) (holding that a prosecutor's decisions regarding plea bargains are entitled to absolute immunity); *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995) (holding that absolute immunity barred claims that a prosecutor made false representations to prompt a plea agreement and then breached the agreement); *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1492 (10th Cir. 1991) (holding that state attorneys were absolutely immune from claims that they engaged in coercive plea bargaining by threatening

to file sexual assault charges against a physician if he did not agree to give up his medical practice); *Briley v. California*, 564 F.2d 849, 856 (9th Cir. 1977) ("[P]rosecutorial immunity extends to the process of plea bargaining as an integral part of the judicial process.") (internal quotation marks and citation omitted).

The majority's argument that the use of excessive force is not prosecutorial activity is no different from the argument rejected in *Mireles*, that a judge's use of excessive force is not "judicial activity." The majority's argument is, in fact, directly in line with Justice Stevens' *dissent* in *Mireles*, where he opined that judicial immunity should not attach. He reasoned, "Ordering a battery has no relation to a function normally performed by a judge," which reasoning was rejected by the majority. *Mireles*, 502 U.S. at 14 (Stevens, J., dissenting).

For the same reason, the majority's reliance on *Doe v. Phillips*, 81 F.3d 1204 (2d Cir. 1996), is unpersuasive. There, the Second Circuit majority also focused on the prosecutor's act itself (the demand for a religious oath on a Bible) rather than the function of act (setting conditions for ending a prosecution). The dissent pointed out the fallacy in the majority's reasoning:

> The majority thus poses a question to which there can be one answer: Is compelling a defendant to participate in a "religious ceremony" a prosecutorial function? That inquiry, however, conflates a generic function of a prosecutor (taking a statement under oath) with the aspect of that conduct which is alleged to be unconstitutional (taking that statement in a church, on a Bible, etc.). That is not the approach we have employed in previous cases. In *Dory* [*v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)], we did not ask whether suborning perjury was "*properly* within the role of a prosecutor"; we held that that inquiry was "immaterial." In *Pinaud* [*v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995)], we did not ask whether it was a prosecutorial function to dissemble and confect false charges. And in *Schloss* [*v. Bouse*, 876 F.2d 287 (2d Cir. 1989)], we did not ask whether procuring releases from civil liability was a prosecutorial act. In each of these cases, we asked whether the underlying conduct was related to the prosecutorial function—and granted absolute immunity if it was,

24

> whether or not the misconduct was egregious. By focusing on the nature of the misconduct in this case, the majority opinion erroneously qualifies absolute immunity.

*Doe*, 81 F.3d at 1214 (Jacobs, J., dissenting).

The majority here likewise focuses on the misconduct at issue and proffers a similarly misdirected question: Is ordering a beating a function normally performed by a prosecutor? Of course not, but the proper question is whether alleged misconduct was related to a prosecutorial function—i.e., was the prosecutor, regardless of the egregiousness of the act, advocating for the State? This immunity in no way countenances prosecutorial misconduct but simply recognizes that the cost of ensuring "the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system" is that "the genuinely wronged defendant" will be "without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty."[8] *Imbler*, 424 U.S. at 427-28.

Of course, absolute immunity, despite its name, does not apply in every situation. "[A] judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12 (internal citations omitted). Further, "a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Id.* at 11 (internal citations omitted). Similarly, prosecutors may not avail themselves of absolute

---

[8] The lack of civil redress does not mean the lack of other forms of relief. Defendants have available various post-conviction procedures in which to challenge the fairness of their trial or voluntariness of their plea. Here, Rouse did, in fact, seek to withdraw his guilty plea in trial court and on appeal. He challenged the voluntariness of his plea claiming not that Stacy coerced it but that he was not informed of the probation restrictions applicable to his sentence. *Rouse v. Kentucky*, No. 2007-CA-002020-MR, 2008 WL 4092869, at *1 (Ky. Ct. App. Sept. 5, 2008).

immunity for actions not prosecutorial in nature. *Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011) ("[A]bsolute immunity protects 'only . . . actions that are connected with the prosecutor's role in judicial proceedings, not . . . every litigation-inducing conduct.'") (omissions in original) (quoting *Burns v. Reed*, 500 U.S. 478, 483 n.2, 494 (1991)).

The majority attempts to wedge its case here, finding that ordering a beating is simply not "prosecutorial" and that Stacy cannot cure the non-prosecutorial nature of his conduct by affixing the label of "plea bargaining" onto it. The problem is that Rouse himself affixed such label, claiming that Stacy beat him in order to procure a guilty plea, and, in considering a motion to dismiss, we take the plaintiff at his word. *E.g.*, *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) ("But there is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law."); *U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003) ("A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense."). The majority contends that Rouse's statements about Stacy's thoughts and intentions are not facts but mere speculation, which warrant no particular regard by this Court. The majority would be correct if we were dealing with a complaint not specific enough, rather than too specific. Here, if Rouse proved his case exactly as he presented it, he would be foreclosed from recovery, and we are under no obligation to save his complaint by contradicting his allegations. *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 458 (6th Cir. 2007) ("When the complaint itself gives reasons to doubt plaintiff's theory, and when later pleadings confirm those doubts, it is not our task [under Rule 12(b)(6)] to resuscitate the claim but to put it to rest. Nothing prevents a plaintiff from pleading itself out of court . . . .") (internal quotation marks and citation

omitted); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.") (internal quotation marks and citation omitted).

Rouse's complaint and subsequent amendments are therefore dispositive. This case would be a different one had Rouse alleged that he was beaten in retaliation for pleading guilty. Then, the alleged beating would have no "relation to a general function normally performed" by a prosecutor, *Mireles*, 502 U.S. at 13, because a prosecutor has no role in meting out punishment. *See, e.g., Gobel v. Maricopa Cnty.*, 867 F.2d 1201, 1206 (9th Cir. 1989) ("The prosecutors are not entitled to absolute immunity on the claim that they illegally punished [plaintiffs] during their post-arrest detention, because such conduct is not intimately associated with the judicial phase of the criminal process and has nothing to do with a prosecutor's role as an advocate."), *abrogated on other grounds as stated in Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 769 (9th Cir. 1989). Even had Rouse pleaded only that he was beaten, without specifying for what purpose, the liberal construction that we afford to the pleadings of pro se litigants, *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999), and requirement to construe all facts in the light most favorable to the plaintiff at the motion to dismiss stage, *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007), would allow us to draw the reasonable inference that the alleged assault was ordered for no prosecutorial purpose. But Rouse specifically and repeatedly alleged that Stacy ordered the beating for the purpose of inducing him to plead guilty, which begins and ends his case.

The majority, however, finds Rouse's complaint beside the point. *See* maj. op. at 14 ("Ultimately, it is of no consequence whether the beating of Rouse is more accurately described as

punitive or coercive."). It finds that, regardless of the label affixed to Stacy's act, Stacy acted "manifestly or palpably beyond [his] authority" and "in the clear absence of all jurisdiction." Maj. op. at 12 (quoting *Doe*, 81 F.3d at 1210). In other words, the majority reasons that there comes a point at which conduct cannot be considered "plea bargaining" at all.

As stated above, I agree that absolute prosecutorial immunity has limits. At some point, a prosecutor's misconduct may cross from advocating the State's case (however outrageously) to personal vendetta. It was on such grounds that *Doe*'s dissent distinguished demands for bribes or sexual favors, misconduct that it agreed "would be unsheltered by absolute immunity." 81 F.3d at 1214 (Jacobs, J., dissenting) ("These acts of misconduct—which serve purely personal interests without an alloy of a public function—differ in kind from the misconduct that is protected by absolute immunity. There is a difference between performing one's office, however disgracefully, and offering to sell it for a purely personal benefit."). It is the "alloy of a public function" on which the analysis turns and which decides this case. *See Adams v. Hanson*, 656 F.3d 397, 403 (6th Cir. 2011) ("The analytical key to prosecutorial immunity, therefore, is *advocacy*—whether the actions in question are those of an advocate.") (emphasis in original) (quoting *Hollaway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (en banc)). While a less specific complaint might have given rise to an inference that the alleged beating was merely a personal power trip or meted out as punishment, the complaint leads us to but one conclusion—that Stacy was acting as an advocate of the State.

Taking the allegations in Rouse's complaint as true, the only reasonable inference is that the alleged assault was perpetrated for the purpose of procuring a plea bargain. Once that is established, it follows that Stacy's actions are protected by absolute prosecutorial immunity under the holding

28

No. 09-6205
*Rouse v. Powdle, et al.*

and reasoning of *Mireles*.  Thus, I respectfully dissent.