**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0784n.06

**No. 10-5842**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
AUG 26, 2013
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| TERRY JAMAR NORRIS, | ) | |
| | ) | |
| *Petitioner-Appellant,* | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JERRY LESTER, Warden, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| *Respondent-Appellee.* | ) | |

**O P I N I O N**

BEFORE:     BOGGS and COLE, Circuit Judges; and QUIST, District Judge.[*]

COLE, Circuit Judge.  Terry Jamar Norris appeals the district court's denial of his habeas

corpus petition, pursuant to 28 U.S.C. § 2254.  He argues that he is entitled to a writ of habeas

corpus due to ineffective assistance of trial and appellate counsel.  Norris contends that his trial

counsel was ineffective for failing to argue that his confession was obtained pursuant to an illegal

arrest and that his appellate counsel was ineffective for failing to argue that his confession was

obtained after the violation of his constitutional right to a prompt probable-cause determination.  We

grant Norris's petition for a writ of habeas corpus, based on the second claim.

I.

On March 10, 1997, Keith Milem was found shot to death. *See State v. Norris*, No. W2000-

00707-CCA-R3-CD, 2002 WL 1042184, at *1-3 (Tenn. Ct. Crim. App. May 21, 2002) (direct appeal

[*]The Honorable Gordon J. Quist, United States District Judge for the Western District of
Michigan, sitting by designation.

opinion). The next day, Norris was arrested. Three days later, Norris confessed to shooting Milem. The events of March 11  13, 1997 form the basis of Norris's current appeal.

After the shooting, Lakendra Mull, Norris's female roommate and Keith's friend, told police that Norris had picked up his gun from their home prior to the shooting, and later followed her when she drove Keith to the home of his uncle, Charles Milem. Charles Milem told police that he saw Keith exiting Mull's car and heard a gun shot immediately afterward. Based on this information, Memphis police officers A.J. Christian and Ernie McCommon came to Norris's mother's home and took Norris, handcuffed and in the back of a squad car, to the Memphis Police Department Homicide Office to be interviewed. The officers did not have a warrant for Norris's arrest.

There is some conflicting testimony as to what time the officers took Norris. According to Marcia Daniel, Norris's mother, the police left with Norris at approximately 5:45 p.m. According to Norris himself, the police arrived at his house "somewhere around" 7:00 p.m. Norris testified that he told his appellate counsel that the police arrested him "[b]efore 7 p.m." *See Norris v. State*, No. W2005-01502-CCA-R3-PC, 2006 WL 2069432, at *5-6 (Tenn. Ct. Crim. App. July 26, 2006) (state habeas appeal opinion).

Officer Christian testified that Norris was not free to leave at the time that he was put into the squad car, and that at 7:30 p.m. Norris was already "in the homicide office," where Officer Christian and Sergeant McCommon conducted a brief "formal interview." At that interview, Norris denied any involvement in the murder. Daniel testified, uncontradicted, that the homicide office was approximately five-and-a-quarter miles from the home. Police records show that Norris called Daniel from the police station at 8:20 p.m. Finally, Norris was "booked . . . into jail," which

included the preparation of an "arrest ticket" by Officer Christian that noted the time of arrest as 8:45 p.m.

Norris was held without further interrogation until the afternoon of March 13. He was advised of his rights and signed an Advice of Rights form at 4:12 p.m. He did not make a statement at that time, instead asking to talk to his mother. He called her at 6:52 p.m. At 7:20 p.m., he began to give his statement to the police, admitting to shooting Milem. He signed the statement at 8:20 p.m. The following morning, Norris was brought before a magistrate for a probable-cause determination.

At trial, Norris's attorney moved to suppress Norris's confession on two grounds not at issue in this appeal. The Tennessee trial court held a hearing, denied the motion, and admitted the confession. A jury convicted Norris of second-degree murder in June 1999, and he was sentenced to twenty-one years of imprisonment.

After the trial, Norris's new attorney who would also be his appellate counsel moved for a new trial. At a hearing on the motion, he argued that Norris's confession should have been suppressed because: (1) it was the fruit of an illegal arrest under *Brown v. Illinois*, 422 U.S. 590 (1975) (holding that a confession "obtained by exploitation of an illegal arrest" is not admissible); and (2) Norris was held for investigative purposes prior to his confession. At the state post-conviction evidentiary hearing, when appellate counsel was asked "if he thought the amount of time the petitioner was in custody prior to giving his confession was a valid issue to pursue . . . [he] answered that he 'apparently' did not because he did not raise it on appeal." *Norris*, 2006 WL 2069432, at *6. The possibility that Norris had been held for more than 48 hours was only

perfunctorily raised by his counsel. Instead, counsel "focused" on the lack of probable cause for the arrest. *See id.* The trial court denied the motion, finding that police had "reasonable suspicion to bring [Norris] in," and that less than 48 hours passed between Norris's arrest and confession.

Norris appealed directly to the Tennessee Court of Criminal Appeals (TCCA). He claimed, among other things, that he received ineffective assistance of counsel at trial because his trial counsel did not raise the *Brown* issue before trial. *See State v. Norris*, 2002 WL 1042184 at *7-9. His appellate counsel again did not attempt to demonstrate that Norris was in custody for more than 48 hours. The TCCA found that Norris was under arrest for less than 48 hours at the time of his confession, *see id.* at *9 (Norris "was arrested at 8:45 p.m. on March 11 [and] confessed to the crime at 8:20 p.m. on March 13 . . . . [H]e was not held for more than forty-eight hours prior to his confession."), and, in any case, rejected the ineffective-assistance claim based on *Brown* because "as a matter of law[,] the officers had probable cause to arrest [Norris]," *id.* at *10.

In March 2003, Norris filed a pro se petition (later amended and supplemented by counsel) in the state trial court for post-conviction relief. He alleged that his appellate counsel was ineffective for failing to show, both during the motion for new trial and on direct appeal, that Norris's confession should have been suppressed under *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), because it occurred more than 48 hours after his warrantless arrest and there was no intervening probable-cause determination. *See Norris v. State*, 2006 WL 2069432, at *8.

The state post-conviction court held an evidentiary hearing to determine how long Norris was in custody before he gave his confession:

> The petitioner testified that he told appellate counsel that he was arrested at his mother's house on March 11, 1997, "[b]efore 7 p .m." and that more than forty-eight hours passed before he gave his statement to police on March 13, 1997. He acknowledged that the advice of rights form showed that he was given the form at 4:05 p.m. and that he signed it at 4:12 p.m. on March 13, but said he did not put the time on it and could not recall exactly what time he signed it, only remembering "[it] was after the evening meal in the jail." The petitioner also acknowledged signing his police statement at 8:20 p.m. and said that he actually gave the statement verbally before this time.

*Norris v. State*, 2006 WL 2069432, at *5-6. The court concluded that Norris had been in custody for less than 48 hours at the time he gave his confession and therefore found Norris's ineffective-assistance claim to be without merit. The TCCA affirmed for the same reason on appeal. *Id.* at 8-9.

On December 10, 2007, Norris filed a pro se habeas corpus petition under 28 U.S.C. § 2254 in the United States District Court for the Western District of Tennessee. Norris contended that his trial counsel was ineffective because (1) he did not seek to suppress Norris's confession due to lack of probable cause for Norris's arrest under *Brown*; and (2) he declined to pursue a self-defense theory per Norris's wishes. Norris claimed his appellate counsel was ineffective because (1) he failed to effectively argue that Norris's confession should be suppressed because he gave it after being held for more than 48 hours without a probable-cause determination, in violation of the 48-hour rule in *McLaughlin*; and (2) he failed to challenge a certain jury instruction on appeal.

The district court found that all of these claims lacked merit and denied a certificate of appealability (COA). Regarding Norris's *McLaughlin* claim, the district court said "Norris . . . cannot overcome his failure to demonstrate that he was actually in custody more than forty-eight hours before giving his confession."

We subsequently granted Norris a COA on two issues:

(1) whether his trial counsel was ineffective for failing to challenge Norris's confession as unconstitutional under *Brown*, and

(2) whether his appellate counsel was ineffective for inadequately presenting a challenge to Norris's confession based on *McLaughlin*.

II.

We review the district court's factual findings for clear error and its legal conclusions de novo. *Smith v. Hofbauer*, 312 F.3d 809, 813 (6th Cir. 2002). To the extent that Norris's ineffective-assistance-of-counsel claims have been adjudicated on the merits in state court, AEDPA deference applies:

> [The writ] shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "as determined by the Supreme Court" means that the law must be clearly established by a Supreme Court *holding*, not mere dictum, and cannot be established merely by a holding of this court (or any other circuit court). *See Carey v. Musladin*, 549 U.S. 70, 74-76 (2006) (finding state court did not contradict clearly established federal law though it clearly contradicted *circuit* precedent interpreting two Supreme Court cases). "[A] determination of a factual issue made by a State court shall be presumed to be correct" and can be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The Sixth Amendment grants Norris a right to effective trial counsel. *See Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). To prevail on a claim of ineffective assistance of counsel, Norris must demonstrate both deficiency and prejudice. He must show that: (1) his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, *see id.* at 688; and (2) there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different, *see id.* at 694. The same standard applies to "assistance of counsel for appeals of right," *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008), such as Norris's direct appeal to the TCCA.

AEDPA deference applies to both prongs of Norris's *Strickland* claims because the state court resolved both deficiency and prejudice on the merits. *See Foster v. Wolfenbarger*, 687 F.3d 702, 709 (6th Cir. 2012) ("[W]here the state court ruled on one prong of the *Strickland* test, but not the other, [this court] appl[ies] a de novo standard of review to the prong that the state court did not consider."). The state courts' decisions regarding the effectiveness of both appellate and trial counsel hinged on the TCCA determinations that the *McLaughlin* and *Brown* challenges lacked merit. This implicitly resolves both the deficiency and prejudice prongs, since (1) it is not unreasonable to fail to raise a challenge that lacks merit; and (2) if the challenge lacks merit, then raising it would not provide a reasonable probability of a different outcome. Accordingly, we apply AEDPA deference to both prongs of each challenge.

A.

Norris argues that trial counsel was ineffective at the suppression hearing due to his failure to raise a *Brown* objection to Norris's arrest. The CCA held that Norris did not have a viable *Brown* objection, and therefore did not have a viable ineffective-assistance claim:

> In this case, our review of the circumstances surrounding the initial seizure of the Defendant yields a different result [than in a case where no probable cause was found]. The testimony of Sergeant A.J. Christian and Lieutenant Ernie K. McCommon at the hearing on the motion to suppress the Defendant's statement and the testimony of Captain Charles E. Logan at the motion for new trial indicate that the officers had probable cause at the time of the Defendant's initial seizure for believing that the Defendant killed Keith Milem. The police were aware immediately after the crime that the victim had died from multiple gunshot wounds. Lakendra Lavonne Mull and Charles Edward Milem provided statements to the police prior to the initial seizure of the Defendant on March 11, 1997 which placed the Defendant, armed with a handgun, at the scene of the crime when it occurred. These statements were consistent with trial testimony by both Mull and Milem. It can be reasonably inferred from Mull's statement that the Defendant, who was jealous about a possible relationship between the victim and the Defendant's girlfriend, followed Mull and the victim to the scene of the crime. Based upon these facts and circumstances and the trial court's findings of fact, we conclude as a matter of law that the officers had probable cause to arrest the Defendant. Because the police officers had probable cause to take the Defendant into custody by arrest on March 11, 1997, it is unnecessary for us to conduct a "fruit of the poisonous tree" analysis.

*State v. Norris*, 2002 WL 1042184, at *10. Norris now contends that the CCA's finding that there was probable cause for his arrest is contrary to clearly established federal law. We disagree.

In *Brown v. Illinois*, the Supreme Court held that inculpatory statements that result from an illegal arrest in violation of the Fourth Amendment should be analyzed under the "fruit of the poisonous tree" doctrine and explained the factors to be considered in deciding whether to suppress the statements. 422 U.S. 590, 602-04 (1975). Richard Brown was arrested without a warrant or probable cause. After being given the full *Miranda* warnings, he made two inculpatory statements.

The Court, under a "fruit of the poisonous tree" analysis, held that Brown's statements were inadmissible because they were "obtained by exploitation of the illegality of his arrest." *Id.* at 600.

No single fact was dispositive in *Brown*, *see id.* at 603, but the Court considered the "temporal proximity of the arrest and the [statements], the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct," placing the burden of proof of admissibility on the government. *Id.* at 604. That Brown's first inculpatory statement came less than two hours after the illegal arrest with no significant intervening events weighed in favor of suppression. *Id.* But the Court seemed to place most emphasis on the purpose and intent behind the violation, finding the arrest to be "investigatory" in "both [] design and [] execution," as evidenced by the detectives' admissions that they arrested Brown "'for investigation' or 'for questioning.'" *Id.* at 605.

Norris argues that the CCA's determination conflicts with clearly established federal law because (1) the police admitted they did not have probable cause to arrest Norris; and (2) the police failed to consider exculpatory evidence at the time of the arrest. Even if the somewhat ambiguous testimony cited by Norris constitutes an admission that the police believed there was no probable cause for arrest, it should not affect the court's probable-cause analysis. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."). However, Norris's second point requires deeper inquiry.

Although the requirement to listen to exculpatory witness accounts is clearly and explicitly established in the law of this circuit, *see Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000);

*Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007), it is not as clearly established by the Supreme Court. Although the Supreme Court has not specified that exculpatory facts must be considered, it has established the broader requirement that the "facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to conclude that the suspect has committed . . a crime." *Devenpeck v. Alford*, 543 U.S. 146, 151 (2004) (citation omitted). *Devenpeck* makes no distinction between inculpatory and exculpatory facts and does not expressly either require or preclude consideration of exculpatory facts.

Even assuming that *Devenpeck* clearly establishes that all facts within the arresting officer's knowledge, including exculpatory facts, must be considered, the conflicts in testimony identified by Norris do not demonstrate that the state courts ignored clearly established federal law or relied on an unreasonable determination of fact in their finding that police had probable cause to arrest Norris. A defendant's mere presence at a crime scene, even when combined with vague indications of motive, is not enough to establish probable cause. *See Harris v. Bornhorst*, 513 F.3d 503, 516 (6th Cir. 2008) ("Even considered cumulatively, this evidence indicates only that . . . neighbors who played together every day, once had a squabble; that a purported [unidentified] relative of [the victim]'s . . . may have said that [the defendant] had once threatened [the victim]; and that [the defendant] was seen on the day of the murder in an area that he frequented every day."). However, in this case Mull's testimony specified that Norris actually followed her and Milem to the scene of the crime with a weapon. Following the victim to the scene, shortly before the shooting and with a gun, is ample probable cause for arrest.

Norris claims that the difference between Mull's description of the car in which Norris followed her (a burgundy Grand Am, *see Norris v. States*, 2006 WL 2069432, at *1) and other witnesses' descriptions of a car leaving the scene after the shooting ("a white box-type Chevy," *State v. Norris*, 2002 WL 1042184 at *3) is so exculpatory as to nullify any probable cause. Norris's citation of *Logsdon* is inapposite: in *Logsdon*, the detective "deliberately" and "off-handedly" refused to listen to witnesses at the crime scene, going so far as to tell one eyewitness to "[t]ell it to the judge." *See* 492 F.3d at 342-43. Here, the officers did not cut off the witnesses, but instead collected the potentially exculpatory information and even testified to it. Norris cites no source for the notion that a single discrepancy in eyewitness identifications constitutes per se lack of probable cause under clearly established federal law. *See also id.* (law enforcement not required to "conduct quasi-trials as a necessary predicate to the warrantless arrest of suspects"). *Cf. Painter v. Robertson*, 185 F.3d 557, 571 n. 21 (6th Cir. 1999) ("[W]here a reasonable police officer would *conclusively* know that an [suspect's] behavior is protected by a legally cognizable affirmative defense, that officer lacks a legal foundation to arrest that [suspect]." (emphasis added)). Although there was a discrepancy in the descriptions of the car, it is not clearly established under federal law that such a discrepancy, given the totality of the circumstances, conclusively exonerates Norris.

The TCCA's determination that there was probable cause for Norris's arrest, and therefore no merit in his *Brown*-based ineffective-assistance claim, was not contrary to clearly established federal law.

- 11 -

B.

Norris contends that (1) his appellate counsel was deficient for failing to argue on direct appeal that Norris's right to a prompt probable-cause determination was violated under *McLaughlin*; and (2) that there is a reasonable probability that Norris would have prevailed on direct appeal had the *McLaughlin* issue been raised.

In *McLaughlin*, the Supreme Court explained the circumstances in which a proper warrantless arrest can lead to a Fourth Amendment violation if a probable-cause determination is not held promptly. 500 U.S. at 47. The Court created a burden-shifting standard that sought to balance the constitutional right to a prompt probable-cause determination with the "reasonable postponement" and "inevitable" delays that could result from "paperwork and logistical problems," especially in jurisdictions where probable-cause determinations are combined with other pretrial procedures. *See id.* at 55. If a probable-cause determination occurred within 48 hours of arrest, the burden is on the arrestee to demonstrate that the probable-cause determination was "delayed unreasonably." *Id.* at 56-57. Delays "for the purpose of gathering additional evidence to justify the arrest," as well as delays "for delay's sake" were given as examples of unreasonable delay. *Id.* at 56. However, where more than 48 hours elapsed between arrest and probable-cause determination, the burden of proof lies with the prosecutor, who must demonstrate "the existence of a bona fide emergency or other extraordinary circumstance" beyond the ordinary logistics involved in combined proceedings. *Id.* at 57.

In *State v. Huddleston*, 924 S.W.2d 666 (Tenn. 1996), the Tennessee Supreme Court held that "the exclusionary rule should apply when a police officer fails to bring an arrestee before a

magistrate [for a probable cause determination] within the time allowed by *McLaughlin*." *Huddleston*, 924 S.W.2d at 673. The *Huddleston* court held that the "fruit of the poisonous tree" analysis should determine whether to suppress statements made during a detention that violates *McLaughlin. Id.* at 674 (citations omitted). Where the state courts refer to a "*Huddleston* violation," they are referring by implication to a *McLaughlin* violation.

Norris's appellate counsel alerted the court to the existence of *McLaughlin* on direct appeal, but did not present a *McLaughlin* challenge to Norris's confession. Without citing *McLaughlin*, the opening appellate brief argued that Norris's confession must be suppressed under *Huddleston* (which merely applies *McLaughlin*) and focused primarily on subjective intent as one would for a *McLaughlin* claim. In his reply brief, appellate counsel discussed *McLaughlin* and the 48-hour presumption directly, but then stated that Norris complained of a *Brown* violation. Certainly appellate counsel did not argue that Norris had been held for over 48 hours without a probable cause determination, nor did he dissect the record to demonstrate this, as would have been necessary to any *McLaughlin* challenge.

On direct appeal, the TCCA *sua sponte* dismissed the possibility of a *McLaughlin* claim on the grounds that Norris was held less than 48 hours, *State v. Norris*, 2002 WL 1042184 at *9, a conclusion based on an arrest time of 8:45 p.m. on March 11, when Norris was booked into jail, *see id.* at *7. At Norris's post-conviction appeal, the TCCA stood by that arrest time because it concluded that, even after a post-conviction evidentiary hearing, "there was only conflicting testimony offered as to when the petitioner was taken into custody." *See Norris v. State*, 2006 WL

2069432 at *9. Thus, the TCCA resolved this ineffective-assistance claim entirely on the merits of the underlying alleged *McLaughlin* violation, specifically on the 48-hour calculation.

Treating the 8:45 p.m. booking time as the arrest time was contrary to clearly established federal law. Even if there is no formal arrest, a person is considered seized for Fourth Amendment purposes when, under the circumstances, a reasonable person would not believe himself free to leave. *See Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). It is undisputed that Norris was transported in handcuffs from his mother's home to the police station. Officer Christian testified that, at the time Norris was put into the squad car, he was "taken into custody" and confirmed that Norris was not free to leave. Officer McCommon testified that he and Officer Christian went "[t]o pick [Norris] up at his home and bring him in for a statement." Under these circumstances, a reasonable person would not feel free to "decline the officers' request[]." *See Florida v. Bostick*, 501 U.S. 429, 436 (1991). Accordingly, Norris was arrested when "taken into custody" by Officers Christian and McCommon.

However, the TCCA's conclusion does not rely solely on the 8:45 p.m. arrest time, but also notes that testimony conflicted as to when Norris was taken into custody. Even resolving all testimony conflicts in favor of the government, it was an unreasonable determination of fact to find that Norris was in custody for less than 48 hours at the time he began to confess. Even if we discount entirely the testimonies of Norris and Daniels favoring an earlier time of arrrest, it is undisputed that Norris was already at the police station at 7:30 p.m. on March 11 and had begun talking with Sergeant Christian. To find that Norris was in custody for less than 48 hours before confessing would require one to believe that Norris was free to go at 7:20 p.m. on March 11, and that

police took less than ten minutes to tell him he was being taken into custody, handcuff him, place him in the back of the cruiser, drive him five-and-a-quarter miles, bring him into the police station, and begin their interview. This is simply implausible. Notwithstanding the conflicts in testimony, the state court's determination that Norris was in custody for less than 48 hours prior to confessing was an unreasonable determination of fact.

Although Norris's attorney was deficient in failing to focus on the precise length of Norris's detention and such an argument had a reasonable probability of persuading the state court that Norris had been in custody for over 48 hours prior to giving his statement on March 13, that fact alone is not enough to prove prejudice. Even if the state court had concluded that there were more than 48 hours of detention prior to confession, under *Huddleston*, Tennessee courts must find that the confession was "fruit of the poisonous tree" in order to suppress it. 924 S.W.2d at 674-75. The court would have had to consider four factors: "(1) the presence or absence of *Miranda* warnings; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and finally, of particular significance, (4) the purpose and flagrancy of the official misconduct." *See id.* Quoting *McLaughlin*, 500 U.S. at 56, the *Huddleston* court held that "delay 'for the purpose of gathering additional evidence to justify the arrest'" supports a finding of purposeful police misconduct. *Id.* at 676.

There is evidence in the record suggesting that officers kept Norris detained to gather additional evidence. Captain Logan testified:

> [Logan:] Based on [the statements of Lakendra Mull and Charles Milem] we decided
> that [Norris] was a good suspect for this homicide.

[Norris's Attorney:] . . . but did you have probable cause to charge him?

[Logan:] Well, after picking him up and getting him in the office and talking to him, he admitted to it.

. . . .

[Norris's Attorney:] You had strong suspicions, and you held him to do further investigation; is that correct?

[Logan:] Yes, we did.

Furthermore, the record contains no alternative explanation for Norris's prolonged detention. *See McLaughlin*, 500 U.S. at 57 (listing examples of appropriate reasons for delay: "transporting arrested persons from one facility to another, handling late-night bookings . . . , obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest"). Since purpose is the most important of the four factors and the burden of proof would have been on the government instead of Norris, there is a reasonable probability that the confession would have been suppressed if Norris's appellate counsel had raised the *McLaughlin* issue in a reasonably competent manner and persuaded the court on direct appeal that Norris's pre-confession detention was longer than 48 hours.

### III.

Accordingly, we grant the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254(d), unless the Respondent reopens Norris's appeal within 180 days to allow him to raise the *McLaughlin* issue on direct appeal.